ELIZABETH CALFEE *v.* AHMED USMAN
(14541)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

*(One justice dissenting)*

Argued September 22—decision released October 30, 1992

*Martin M. Looney,* with whom, on the brief, was *John A. Keyes,* for the appellant (plaintiff).

*Edward V. Walsh,* with whom were *Robert M. Wechsler* and, on the brief, *Catherine N. Anderson,* for the appellee (defendant).

PETERS, C. J. The dispositive issue in this appeal is whether, in a tort action, two prejudgment remedy statutes, General Statutes §§ 52-278c and 52-278d,[1] are

---

[1] General Statutes § 52-278c provides in relevant part: "(a) Except as provided in sections 52-278e and 52-278f, any person desiring to secure a prejudgment remedy shall attach his proposed unsigned writ, summons and complaint to the following documents: (1) An application, directed to the superior court to which the action is made returnable, for the prejudgment remedy requested; (2) An affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that

unconstitutionally vague as a matter of law. The plaintiff, Elizabeth Calfee, made an application for a prejudgment remedy in conjunction with her complaint that the defendant, Ahmed Usman, had negligently operated his automobile so as to cause her serious personal injury. During an adversarial hearing at which the plaintiff made an offer of proof about the automobile accident and its physical sequelae, the trial court denied the application for a prejudgment remedy as a matter of law. When the trial court thereafter denied the plaintiff's motion to open, she filed a timely appeal to the Appellate Court in accordance with General Statutes § 52-278*l*.[2] We transferred her appeal to this court in accordance with Practice Book § 4023 and General Statutes § 51-199 (c) and now reverse the judgment of the trial court.

there is probable cause that judgment will be rendered in the matter in favor of the plaintiff . . . ."

General Statutes § 52-278d provides in relevant part: "(a) The defendant shall have the right to appear and be heard at the hearing. The hearing shall be limited to a determination of whether or not there is probable cause to sustain the validity of the plaintiff's claim. If the court, upon consideration of the facts before it, finds that the plaintiff has shown probable cause to sustain the validity of his claim, then the prejudgment remedy applied for shall be granted as requested or as modified by the court unless the prejudgment remedy or application for such prejudgment remedy was dismissed or withdrawn pursuant to the provisions of section 52-278j. . . .

"(c) If a prejudgment remedy is issued and the defendant moves the court for a stay, the court may, if it determines justice so requires, stay such order if the defendant posts a bond, with surety, in a sum determined by such judge to be sufficient to indemnify the adverse party for any damage which may accrue as a result of such stay."

[2] General Statutes § 52-278*l* provides in relevant part: "(a) An order (1) granting or denying a prejudgment remedy following a hearing under section 52-278d . . . shall be deemed a final judgment for purposes of appeal.

"(b) No such appeal shall be taken except within seven days of the rendering of the order from which the appeal is to be taken.

"(c) No such order shall be stayed by the taking of an appeal except upon the order of the judge who made such order, and any such stay shall be granted only if the party taking the appeal posts a bond, with surety, in a sum determined by such judge to be sufficient to indemnify the adverse party for any damages which may accrue as a result of such stay. . . ."

The validity of the plaintiff's complaint is not at issue in this appeal, since the trial court reached no conclusion about the sufficiency of the complaint's allegations or the evidence that the plaintiff proffered in support of her claim to a prejudgment remedy. For present purposes, we note only that the plaintiff alleged that the defendant had struck her with his car as he was backing out of a driveway onto a public street. As a result of the accident, the plaintiff allegedly suffered a hip fracture requiring emergency room admittance, surgery and intensive physical therapy.

To secure the right to collect whatever judgment might subsequently be rendered against the defendant, the plaintiff at an adversarial hearing sought, in accordance with § 52-278d, to establish probable cause to sustain the validity of her claim. The trial court refused to hear the plaintiff's evidence, but allowed her to make an offer of proof. Relying on *Connecticut* v. *Doehr,* 500 U.S.    , 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), the trial court ruled that §§ 52-278c and 52-278d were facially unenforceable as a matter of federal constitutional law. The trial court held that the statutory standards for judicial determination of probable cause were both conflicting and obscure and hence failed to satisfy the constitutional requirements of due process.

The plaintiff's appeal challenges the validity of this ruling by the trial court. The plaintiff urges us to hold that the two statutes have been interpreted consistently to provide a meaningful standard for a prejudgment remedy determination. She maintains that, in the context of an adversarial hearing, the statutes pass constitutional muster. We agree with the plaintiff.[3]

---

[3] As an alternate ground for sustaining the judgment of the trial court, the defendant urges us to consider whether the prejudgment remedy statutes are unconstitutional because the statutes allow a plaintiff to pursue such a remedy without posting a bond or other security to protect the rights of the defendant in the property that is being attached. In *Connecticut* v.

We begin our analysis with three well established principles that govern constitutional challenges to validly enacted statutes. Because a statute carries with it a strong presumption of constitutionality, a challenger must establish its unconstitutionality beyond a reasonable doubt. *Bartholomew* v. *Schweizer,* 217 Conn. 671, 675, 587 A.2d 1014 (1991); *State* v. *Floyd,* ·217 Conn. 73, 79, 584 A.2d 1157 (1991); *Zapata* v. *Burns,* 207 Conn. 496, 508, 542 A.2d 700 (1988). In the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face. *Lehrer* v. *Davis,* 214 Conn. 232, 234–35, 571 A.2d 691 (1990); *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 75, 523 A.2d 486 (1987); *State* v. *Zach,* 198 Conn. 168, 176–78, 502 A.2d 896 (1985). In construing a statute, the court must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. *Bartholomew* v. *Schweizer,* supra, 675–76; *State* v. *Floyd,* supra; *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 705–706, 553 A.2d 596 (1989).

Applying these principles to the prejudgment remedy statutes, we are persuaded that the provisions for a prejudgment remedy in §§ 52-278c and 52-278d are not unconstitutionally vague on their face. As this court has already indicated in two cases postdating *Connecticut* v. *Doehr,* supra, if the defendant is afforded the

*Doehr,* 500 U.S.     , 111 S. Ct. 2105, 2117, 115 L. Ed. 2d 1 (1991), four justices concluded that such a bond was a constitutional requisite, even if probable cause was established after a full hearing.

The record establishes that the parties presented no claim about a constitutional requirement for a bond to the trial court. The plaintiff contends that it is, therefore, inappropriate for us to reach this issue. We agree. See Practice Book § 4185; *Berry* v. *Loiseau,* 223 Conn. 786, 828, 614 A.2d 414 (1992). The very seriousness of this issue commends to us the importance of deciding it only when it has been fully briefed and heard in the trial court as well as in this court.

opportunity, in an adversarial hearing, to contest the validity of the claims made by the plaintiff in support of an application for a prejudgment remedy, a prejudgment attachment may constitutionally be issued without a showing of exigent circumstances. *Shawmut Bank, N.A.* v. *Valley Farms,* 222 Conn. 361, 373, 610 A.2d 652 (1992); *Union Trust Co.* v. *Heggelund,* 219 Conn. 620, 624 n.3, 594 A.2d 464 (1991).[4] When there is no ex parte impairment of the defendant's property rights, a judicial finding of probable cause suffices to satisfy the defendant's constitutional right to due process.

The defendant advances three arguments in support of the contrary ruling of the trial court. He maintains that: (1) the holding of *Connecticut* v. *Doehr,* supra, directly addresses and resolves the issue of the vagueness of the probable cause directives in §§ 52-278c and 52-278d in his favor; (2) the analytic model developed in *Mathews* v. *Eldridge,* 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), upon which *Connecticut* v. *Doehr,* supra, relied, renders the statutory probable cause standard violative of due process, especially in the context of a plaintiff's action sounding in tort; and (3) the plaintiff's attempt to secure a prejudgment remedy for a single accident on three pieces of property owned by the defendant manifestly impairs his due process rights as a matter of law.

The decision of the United States Supreme Court in *Connecticut* v. *Doehr,* supra, did not deal directly with the validity of a prejudgment remedy under §§ 52-278c or 52-278d. The statute that the court found to be constitutionally defective was General Statutes (Rev. to

---

[4] In those cases, as in the present case, the court did not consider whether the bonding provisions of the prejudgment remedy statutes pass constitutional muster.

1991) § 52-278e (a) (1),[5] which authorizes the prejudgment attachment of real property "without affording prior notice or the opportunity for a prior hearing to the individual whose property is subject to the attachment." Id., 2109. The court's decision relied on other prejudgment cases in which due process violations had been found in statutes authorizing the ex parte impairment of property rights. *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U.S. 601, 605–607, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975); *Fuentes* v. *Shevin,* 407 U.S. 67, 96, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); *Sniadach* v. *Family Finance Corporation of Bay View,* 395 U.S. 337, 342, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969). The court's opinion repeatedly emphasized the ex parte nature of the proceedings before it. It quoted Justice Frankfurter's concurrence in *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 341 U.S. 123, 170–72, 71 S. Ct. 624, 95 L. Ed. 817 (1951): "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and an opportunity to meet it." *Connecticut* v. *Doehr,* supra, 2114. In its concluding paragraph on this issue, the court reiterated that § 52-278e failed to comport with the demands of due process "by failing to provide a preattachment hearing without at least requiring a showing of some exigent circumstance." Id., 2116. The court's decision, therefore, does not determine the constitutionality of a prejudgment remedy to be issued after an adversarial hearing in accordance with § 52-278d.

---

[5] General Statutes (Rev. to 1991) § 52-278e (a) (1) provides: "(a) The court or a judge of the court may allow the prejudgment remedy to be issued by an attorney without hearing as provided in sections 52-278c and 52-278d upon verification by oath of the plaintiff or of some competent affiant, that there is probable cause to sustain the validity of the plaintiff's claim and (1) that the prejudgment remedy requested is for an attachment of real property."

The defendant advances a more plausible claim in his contention that § 52-278d cannot withstand the three-fold due process inquiry identified in *Mathews* v. *Eldridge,* supra. That inquiry requires a consideration of "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and lastly "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id., 334–35. It is unarguable that "the private interest that will be affected by the official action" is the same whether an attachment is ordered after an adversarial hearing or ex parte. Neither party has advanced a contention that the government's interest in providing prejudgment remedies to private litigants is either enhanced or diminished by an adversarial hearing as opposed to ex parte proceedings. The gravamen of the defendant's claim is that "the risk of an erroneous deprivation of such interest" continues to be constitutionally unacceptable, even after an adversarial hearing, because such a hearing cannot overcome the unconstitutional obscurity of the statutory standards for probable cause established by §§ 52-278c and 52-278d.

Section 52-278d authorizes a trial court to issue a prejudgment attachment upon a determination of "probable cause to sustain the validity of the plaintiff's claim." Although § 52-278c speaks of "probable cause that judgment will be rendered in the matter in favor of the plaintiff," we have held that both of these probable cause formulations require the trial court to undertake the same inquiry. "[T]he trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plain-

tiff in a trial on the merits. *New England Land Co.* v. *DeMarkey,* 213 Conn. 612, 620–21, 569 A.2d 1098 (1990). 'The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities.' Id., 620. Moreover, this weighing process applies to both legal and factual issues. *Augeri* v. *C. F. Wooding Co.,* 173 Conn. 426, 429, 378 A.2d 538 (1977); *Babiarz* v. *Hartford Special, Inc.,* 2 Conn. App. 388, 393, 480 A.2d 561 (1984)." *Bank of Boston Connecticut* v. *Schlesinger,* 220 Conn. 152, 156, 595 A.2d 872 (1991); see also *Three S. Development Co.* v. *Santore,* 193 Conn. 174, 175–76, 474 A.2d 795 (1984). As a matter of judicial construction, therefore, there is no conflict between the statutory standards contained in §§ 52-278c and 52-278d.

We are unpersuaded by the defendant's claim that this statutory standard cannot constitutionally be applied in the defendant's case. The statute affords the defendant the opportunity to challenge the accuracy of the factual representations and the legal contentions upon which the plaintiff relies. The fact that her claim sounds in tort rather than in contract does not leave the trial court without guidance. Probable cause is a standard widely used to validate a preliminary impairment of a broad range of personal and property rights, from the suspension of professional licenses to the issuances of warrants for seizure and arrest.[6] The defend-

---

[6] See, e.g., General Statutes § 1-82 (ethical code violations); § 2-71r (bidding disqualification); § 9-7a (elections violations); § 14-227a (arrest for operating an automobile under the influence of alcohol or drugs); § 15-154 (search of a polluting vessel); § 17a-101 (removal of a child in immediate physical danger); § 17a-503 (detention of a person who is mentally ill and dangerous); § 20-13e (institution of disciplinary proceedings against physician);

ant has cited no case, nor has our research uncovered any, in which the Supreme Court of the United States or this court has found a probable cause standard to be unconstitutionally vague on the ground that such a standard necessarily requires an inquiry into probabilities. The validity of a probable cause standard has regularly been upheld in the criminal law context. Such impairment of liberty rights is undeniably more serious than the impairment of property rights arising out of an attachment. See, e.g., *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879, reh. denied, 338 U.S. 839, 70 S. Ct. 31, 94 L. Ed. 513 (1949); *State* v. *Barton,* 219 Conn. 529, 548, 594 A.2d 917 (1991).

The defendant's final claim contests the scope of the attachment sought by the plaintiff, specifically the plaintiff's contention that she is entitled to an attachment lien on three pieces of property owned by the defendant. This claim merits little discussion. The trial court has the responsibility, after the adversarial evidentiary hearing, "to consider not only the validity of the plaintiff's claim but also the amount that is being sought." *Union Trust Co.* v. *Heggelund,* supra, 625. There is no facial unconstitutionality in allowing the trial court, after such a hearing, to make a determination of how much of the defendant's property may prop-

§ 21a-8 (hearing on consumer fraud complaint); § 21a-96 (placing embargo on illegal food, drugs or cosmetics); § 21a-340 (placing embargo on misbranded hazardous substances); § 45a-64 (hearing on judicial misconduct); § 46b-127 (transfer of juvenile to regular adult docket); § 46b-161 (paternity claims); § 49-35b (validity of mechanic's lien); § 51-90g (hearing on attorney grievances); § 52-568 (vexatious suits); § 53-39 (malicious prosecution); § 53-398 (injunction pursuant to the Corrupt Organizations and Racketeering Activity Act); § 54-2a (arrest warrant); § 54-33a (search warrant); § 54-41d (wiretap authorization); § 54-46a (hearings for persons charged with capital crimes); § 54-47c (grand jury investigation); § 54-56d (examination of competency to stand trial); and § 54-64f (hearing on violation of conditions of release).

erly be attached in order to safeguard the collectibility of a potential future judgment in favor of the plaintiff.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion CALLAHAN, BORDEN and NORCOTT, Js., concurred.

BERDON, J., concurring in part and dissenting in part. I concur with the majority that the provisions for prejudgment remedy in General Statutes §§ 52-278c and 52-278d are not unconstitutionally vague on their face. I agree that a prejudgment remedy in the form of an attachment on real estate based upon probable cause after the defendant is afforded an adversary hearing[1] passes constitutional muster, but only if reasonable protections are afforded to the defendant if the plaintiff is not successful on the underlying claim.

My dissent focuses on the safeguards necessary to protect the defendant from the possibility of an erroneous attachment. The defendant raises an alternate ground for sustaining the judgment of the trial court—that the prejudgment remedy statutory scheme is unconstitutional because it allows the plaintiff to obtain a prejudgment remedy without posting a bond or other

---

[1] The majority opinion points out that, under the federal constitution, the "validity of a probable cause standard has regularly been upheld in the criminal law context." Of course, it never ceases to amaze me that due process requires an adversary hearing to determine probable cause for a deprivation of a person's property interest (which does not even affect this person's right to possession in the case of a lien on real property); *Connecticut* v. *Doehr,* 500 U.S. , 111 S. Ct. 2105, 2112-16, 115 L. Ed. 2d 1 (1991); but there is no requirement for an adversary hearing when the state seeks to deprive a person of liberty based upon probable cause. *Gerstein* v. *Pugh,* 420 U.S. 103, 120, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975); R. Berdon, "Liberty and Property under the Procedural Due Process Clause: The Requirement of an Adversary Hearing to Determine Probable Cause," 53 Conn. B.J. 31 (1979).

security. I would reach that issue and find that, because the plaintiff is not required to post a bond or other security to protect the defendant from a wrongful attachment, the prejudgment statutes violate the federal due process clause.

This is an issue of great public importance. Not only does it involve the validity of the prejudgment statutes for claims of personal injury predicated on torts, but for all causes of action. The parties in this action, as well as the public and other concerned branches of government, have a right to a determination of whether the prejudgment statutes are deficient because they fail to provide for a bond or other security to protect the defendant from an erroneous deprivation of his or her property. Equally important, the majority's failure to reach this issue leaves our trial judges with no guidance on an issue that comes before them on a daily basis.

Although the issue was squarely raised and briefed by the defendant before this court, the majority refuses to address it because the claim was not presented to the trial court. Whether a bond is required for the prejudgment remedy statutes to pass constitutional muster, however, is a question of law. Furthermore, it is clear that the issues of probable cause and the requirement of security "are intertwined and can fairly be considered facets of [the] same general issue" that was addressed by the majority. *Connecticut* v. *Doehr,* 500 U.S.     , 111 S. Ct. 2105, 2116 n.7, 115 L. Ed. 2d 1 (1991) (White, J., concurring). Instead of deciding this issue, which is ripe for a determination, we turn the parties away to pursue it before the unguided trial court. This subjects them to the possibility of another appeal on this issue and the enormous litigation expense this would entail.

The Supreme Court of the United States in *Doehr* pointed out that a prejudgment remedy in the form of an attachment on real property significantly affects property interests. "For a property owner like Doehr, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause." Id., 2113.

The prejudgment remedy statutes do not protect the defendant from the consequences of a wrongful attachment even if there is an adversary proceeding. For example, if an insolvent plaintiff secures a prejudgment remedy on a claim, but subsequently fails to prove either liability or damages to the full extent of the prejudgment remedy, the defendant has no practical recourse for the recovery of damages resulting from the erroneous deprivation of his property. The harm caused to the defendant could be significant in view of the long lapse of time that can occur between the granting of the prejudgment remedy and the final resolution of the litigation.

In *Doehr*, although the majority refused to reach the issue, four justices (Justices White, Marshall, Stevens and O'Connor) opined that our prejudgment remedy statutes were unconstitutional because the statutory scheme did not provide for a bond or other security. Justice White wrote as follows: "Without a bond, at the time of attachment, the danger that these property rights may be wrongfully deprived remains unacceptably high even with such safeguards as a hearing or exigency requirement. The need for a bond is especially apparent where extraordinary circumstances justify an attachment with no more than the plaintiff's ex parte assertion of a claim. We have already discussed how due process tolerates, and the States generally permit,

the otherwise impermissible chance of erroneously depriving the defendant in such situations in light of the heightened interest of the plaintiff. Until a postattachment hearing, however, a defendant has no protection against damages sustained where no extraordinary circumstance in fact existed or the plaintiff's likelihood of recovery was nil. Such protection is what a bond can supply. Both the Court and its individual members have repeatedly found the requirement of a bond to play an essential role in reducing what would have been too great a degree of risk in precisely this type of circumstance.

"But the need for a bond does not end here. A defendant's property rights remain at undue risk *even when there has been an adversarial hearing to determine the plaintiff's likelihood of recovery.* At best, a court's initial assessment of each party's case cannot produce more than an educated prediction as to who will win. This is especially true when, as here, the nature of the claim makes any accurate prediction elusive. . . . In consequence, even a full hearing under a proper probable-cause standard would not prevent many defendants from having title to their homes impaired during the pendency of suits that never result in the contingency that ultimately justifies such impairment, namely, an award to the plaintiff. Attachment measures currently on the books reflect this concern. All but a handful of states require a plaintiff's bond despite also affording a hearing either before, or (for the vast majority, only under extraordinary circumstances) soon after, an attachment takes place. Bonds have been a similarly common feature of other prejudgment remedy procedures that we have considered, whether or not these procedures also included a hearing." (Citations omitted; emphasis added.) *Connecticut* v. *Doehr,* supra, 2117.[2]

---

[2] In answer to the argument that General Statutes § 52-568 (a) (1), which provides for the remedy of double damages for suits that are commenced

Accordingly, I would find the prejudgment remedy statutes, §§ 52-278a through 52-278n, insofar as they allow a plaintiff to attach a defendant's property without posting a bond or other security, unconstitutional[3] as violating the due process clause of the United States constitution.[4]

---

without probable cause, protects a defendant, Justice White points out the following: "This remedy, however, fails to make up for the lack of a bond. As an initial matter, the meaning of 'probable cause' in this provision is no more clear here than it was in the attachment provision itself. Should the term mean the plaintiff's good faith or the facial adequacy of the complaint, the remedy is clearly insufficient. A defendant who was deprived where there was little or no likelihood that the plaintiff would obtain a judgment could nonetheless recover only by proving some type of fraud or malice or by showing that the plaintiff had failed to state a claim. Problems persist even if the plaintiff's ultimate failure permits recovery. At best a defendant must await a decision on the merits of the plaintiff's complaint, even assuming that a § 52-568 (a) (1) action may be brought as a counterclaim. *Hydro Air of Connecticut, Inc.* v. *Versa Technologies, Inc.,* 99 F.R.D. 111, 113 (Conn. 1983). Settlement, under Connecticut law, precludes seeking the damages remedy, a fact that encourages the use of attachments as a tactical device to pressure an opponent to capitulate. *Blake* v. *Levy,* 191 Conn. 257, 464 A.2d 52 (1983). An attorney's advice that there is probable cause to commence an action constitutes a complete defense, even if the advice was unsound or erroneous. *Vandersluis* v. *Weil,* 176 Conn. 353, 361, 407 A.2d 982 (1978). Finally, there is no guarantee that the original plaintiff will have adequate assets to satisfy an award that the defendant may win.

"Nor is there any appreciable interest against a bond requirement. [General Statutes §] 52-278e (a) (1) does not require a plaintiff to show exigent circumstances nor any pre-existing interest in the property facing attachment. A party must show more than the mere existence of a claim before subjecting an opponent to prejudgment proceedings that carry a significant risk of erroneous deprivation." *Connecticut* v. *Doehr,* 500 U.S.    , 111 S. Ct. 2105, 2117–18, 115 L. Ed. 2d 1 (1991).

[3] Indeed, as the defendant points out in his brief, a party whose property is attached may only obtain a release if he or she posts a bond with sufficient security. Likewise, under General Statutes § 52-278d (c), the defendant may move for a stay of a prejudgment remedy, but it will only be ordered "if the defendant posts a bond, with surety, in a sum determined by such judge to be sufficient to indemnify the adverse party for any damage which may accrue as a result of such stay." The statutory scheme, which protects the creditor but fails to furnish any protection for the debtor, underscores its unconstitutionality.

[4] The defendant has failed to raise an independent claim under the due process clause of article first, § 10, of the Connecticut constitution.