[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs, Joseph Ambroise and Rosita Ambroise, made an application for a prejudgment remedy seeking an order from the court that a hearing take place to determine whether a prejudgment remedy should be issued to attach personal and real property of defendants William Raveis Real Estate, Inc., [Raveis], James Ero; Stephen Melillo; and Marlene B. Melillo to secure the sum of $100,000.00. Attached to the application are plaintiffs' proposed writ, summons and complaint, order and plaintiff Joseph Ambroise's CT Page 638 affidavit.
In their proposed four count complaint, plaintiffs allege that defendants made misrepresentations concerning a certain piece of property in order to induce plaintiffs to purchase the property. Plaintiffs further allege that as a result of defendants' misrepresentations and plaintiffs' reliance thereon, plaintiffs have suffered economic loss and seek damages, attorneys' fees, costs and interest.
 Because a statute carries with it a strong presumption of constitutionality, a challenger must establish its constitutionality beyond a reasonable doubt. In the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face. In construing a statute, the court must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent.
(Citations omitted.) Calfee v. Usman, 224 Conn. 29, 33,___ A.2d ___ (1992).
"The requirements of due process of law are not technical, nor is any particular form of procedure necessary. Due process of law guarantees `no particular form of procedure; it protects substantial rights.'" (Citations omitted.) Mitchell v. W.T. Grant Company, 416 U.S. 600, 610, 94 S.Ct. 1895, 1901 (1974). To determine whether Connecticut's prejudgment attachment statutes violate due process the relevant inquiry requires,
 first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, . . . principal attention to the interest of the party seeking the prejudgment remedy, with, none the less, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protection.
Connecticut v. Doehr, ___ U.S. ___, 111 S.Ct. 2105, 2112 (1992), citing Mathew v. Eldridge, 424 U.S. 319, 335 (1976).
The Doehr court held that the property interest that an CT Page 639 attachment on real property affects is significant. The court found that:
 [f]or a property owner . . . attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional
1901 (1974). To determine whether Connecticut's prejudgment attachment statutes violate due process the relevant inquiry requires,
 first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, . . . principal attention to the interest of the party seeking the prejudgment remedy, with, none the less, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protection.
Connecticut v. Doehr, ___ U.S. ___, 111 S.Ct. 2105, 2112
(1992), citing Mathew v. Eldridge, 424 U.S. 319, 335 (1976).
The Doehr court held that the property interest that an attachment on real property affects is significant. The court found that:
 [f]or a property owner . . . attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause. Nor does Connecticut deny that any of these consequences occurs.
Connecticut v. Doehr, supra, 2113. Like the defendant property owner in Doehr, the defendants' property interests that attachments would affect in the present case would also be significant.
In examining the risk of erroneous deprivation through the procedures under attack and the probable value of additional or CT Page 640 alternative safeguards, this court considers the case of Calfee v. Usman, 224 Conn. 29, ___ A.2d ___ (1992). In Calfee, the court held that the prejudgment remedy statutes, General Statutes 52-278c
and 52-278d, are not unconstitutionally vague on their face and that there is no conflict between the statutory standards for determining probable cause contained in the two statutes. Id., 33-38.
 "[T]he trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiffs in a trial on the merits. New England Land Co. v. DeMarkey, 213 Conn. 612, 620-21, 569 A.2d 1098 (1990). `The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities.' Id., 620. Moreover, this weighing process applies to both legal and factual issues. Augeri v. C. F. Wooding Co., 173 Conn. 426, 429, 378 A.2d 538 (1977); Babiarz v. Hartford Special, Inc., 2 Conn. App. 388, 393, 480 A.2d 561
(1984)." Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 156, 595 A.2d 872 (1991); see also Three S. Development Co. v. Santore, 193 Conn. 174, 175-76, 474 A.2d 795 (1984).
Id., 36-7. "In its determination of probable cause, `the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. Augeri v. C.F. Wooding Co.,173 Conn. 426, 429, 378 A.2d 538 (1977).'" New England Land Co., Ltd. v. DeMarkey, 213 Conn. 612, 620-21, 569 A.2d 1098 (1990).
The court in Calfee outlined a flexible standard for determining whether there is probable cause to issue a prejudgment remedy of attachment. The court went on to refer to the probable cause standard as that which "has regularly been upheld in the criminal law context." Calfee, supra, 38. "In considering the quantum of certainty required [for a finding of probable cause], it is only a probability, not a prima facie showing of criminal activity, that is the standard of probable cause." (Citations omitted.) State v. Couture, 194 Conn. 530, 456, 482 A.2d 300
(1984), cert. denied, 469 U.S. 1192, 105 S.Ct. 967 (1984). CT Page 641 Therefore, simply stated, the standard of probable cause "is less demanding than that which attends an inquiry into whether there has been a prima facie showing. . . ." (Citation omitted.) State v. Henry, 193 Conn. 612, 617, 480 A.2d 452 (1984). A prima facie showing is that amount of evidence necessary to get the plaintiff's case to the jury. See Black's law Dictionary 1-71 (5th Ed. 1979); 9 Wigmore, Evidence 2494 (Chadbourne Rev. 1981). Therefore, it would appear that under Calfee, an attachment could be granted with less proof than that required to go to a jury, although some might interpret 52-278c as requiring a greater degree of proof.
It is apparent that the amount of proof required before attachment will issue leaves the presiding judge with wide discretion. Because this court is vested with broad discretion in determining probable cause, the chance of erroneous deprivation is greater than in a case where the standard to be applied is restricted. A higher and more restricted standard would be an added safeguard that would reduce the risk of erroneous deprivation.
The risk of erroneous deprivation of property is also substantial in the present case because there is no statutory procedure that requires a plaintiff to obtain a meaningful bond or other security to protect a defendant from an erroneous prejudgment attachment. This attachment, if granted, could become an encumbrance on defendants' property of long duration due to the extensive period of time that could elapse before a final resolution of the case is reached. A requirement that the plaintiff in this case post a bond would substantially protect the defendants from any possible damages from an erroneous prejudgment attachment. The bond requirements must be such so as to make it clear that if, subsequent to the granting of a prejudgment remedy, the plaintiff does not win on the merits of the underlying action, the fact that the prejudgment remedy was an order of the court will not act to absolve the plaintiff of liability under the bond. See Connecticut State Employees Ass'n. v. AFSCME, 188 Conn. 196, 198-199,448 A.2d 1341 (1982) (Bond requirement under General Statutes31-115 is to protect one injured by the issuance of a temporary injunction in case the court later determines that the temporary injunction was wrongfully issued). Thus, in a suit under the bond, the issue will not be one of liability, but merely damages.
The present case is based upon alleged misrepresentations concerning the purchase of a piece of property. Such an action does not lend itself to as easy a determination of damages as CT Page 642 disputes between debtors and creditors might. There is a substantial risk of erroneous deprivation due to the failure of the prejudgment remedy statutes to require plaintiffs to post a bond in the present action. Therefore, there is a substantial need for additional or alternative safeguards.
The interest of the plaintiffs in seeking the prejudgment remedy of attachment is minimal. Plaintiffs' complaint and Joseph Ambroise's affidavit fail to show that plaintiffs have any existing interest in defendants' real property. Plaintiffs' only interest in attaching the property appears to be to ensure the availability of assets to satisfy plaintiffs' claim if plaintiffs are successful on the merits of their action. There have been no allegations that defendants lack other assets to satisfy plaintiffs' claim.
"The state's substantive interest in protecting any rights of the plaintiff cannot be any more weighty than those rights themselves." Connecticut v. Doehr, supra, 2115. In the instant case the plaintiffs' interest is de minimus and therefore any interest the government may have would be minimal.
Plaintiffs argue that there are existing safeguards that obviate the need for plaintiffs to post a bond. Plaintiffs contend that under the statutory procedure the defendant may post a bond or provide alternative security. Justice Berdon, concurring in part and dissenting in part in Calfee v. Usman, answered this argument by stating that "[t]he statutory scheme, which protects the creditor but fails to furnish any protection for the debtor, underscores its unconstitutionality." Calfee v. Usman, supra, 42 n. 3.
Plaintiffs also argue that Connecticut's vexatious litigation statute, General Statutes 52-568 (a), provides another source of protection to defendants by allowing defendants to seek double or treble damages. Again, Justice Berdon answers this argument by citing to part IV of Justice White's opinion in Doehr, which part was not reached by a majority of the court, on the issue of whether due process also requires a plaintiff to post a bond. "This remedy [General Statutes 52-568a], however, fails to make up for the lack of a bond." Calfee v. Usman, supra, 43 n. 2, citing Connecticut v. Doehr, ___ U.S. ___, 111 S.Ct. 2105, 2117-18,115 L.Ed.2d 1 (1991). "[T]here is no guarantee that the original plaintiff will have adequate assets to satisfy an award that the defendant may win." Id. As the preceding discussion indicates, these purported safeguards are inadequate to overcome the risk of CT Page 643 erroneous deprivation.
Given the substantial effect of a prejudgment attachment upon the interests of a property owner, the inadequate safeguards that may lead to a substantial risk of erroneous deprivation and the minimal interests of the plaintiffs and the state, this court holds that under the facts of this case, the prejudgment remedy Statutes52-278a et seq., violate the requirements of due process under the Connecticut and United States Constitutions by their failure to require the plaintiffs to obtain a bond before attachment.
This court is aware of the recent Superior Court Decision, M L Building Corp. v. CNF Industries, Inc., 5 CTLR 509 (February 3, 1992, McWeeny, J.), which held that the failure of the prejudgment remedy act to require a plaintiff to post a bond or other security did not render the act unconstitutional. Id., 510. The court in M L Building Corp., reasoned that defendants had not sustained their burden. Id. However, in examining the facts of the present case under the threefold inquiry as set forth in Doehr for determining the adequacy of procedures, this court reaches a different conclusion and declines to follow the court in M L Building Corp.
Accordingly, plaintiffs' application for a prejudgment attachment is denied.
DEAN, J.