[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed an application for a Prejudgment Remedy in conjunction with his complaint. A hearing was held in order to determine whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, CT Page 11678 counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff, pursuant to CGS § 52-278d.
Peter A. Colson brings his cause of action against three defendants: PetroVision, Inc. (PetroVision) a corporation; Frederick H. Brooke III (Brooke), President of PetroVision; and Kirk F. Blanchard (Blanchard), Secretary and Treasurer of PetroVision.
The plaintiff, in the First Count of the Third Amended Complaint, claims the defendants' failure to pay wages pursuant to CGS § 31-72. In the Second Count the plaintiff claims wrongful termination of employment pursuant to C.G.S. § 31-51m. In the third count[1] of the complaint the plaintiff claims breach of contract to provide medical, dental and life insurance. In the Fourth Count[2] the plaintiff claims a violation of C.G.S. § 38a-537.
In Calfee v. Usman, 224 Conn. 29, 616 A.2d 250 (1992), the Connecticut Supreme Court outlined a flexible standard for determining whether there is probable cause to issue a prejudgment remedy of attachment. "The trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. (Citation omitted). The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim . . . The court's role in such a hearing is to determine probable success by weighing probabilities. (Citation omitted). Moreover, this weighing process applies to both legal and factual issues. Id., 36-37.
 I. A.
Relevant to Count One of the complaint the Court finds the following facts. The defendants did hire plaintiff as a "sales manager" commencing on January 18, 1999. The compensation package at the time of the hiring consisted of a base salary of $35,000 per annum, a 15% commission of net sales attributable to plaintiff, health and dental insurance coverage and reimbursement for business expenses.
The plaintiff claims that he was not paid his base salary in violation of C.G.S. § 31-72. The court finds that the plaintiff was hired January 18, 1999 by the defendants and terminated October 1, 1999. The plaintiff was paid wages for the first three pay periods commensurate with a $35,000 per annum base salary. The plaintiff was not paid wages from CT Page 11679 February 20, 1999 to October 1, 1999, a period of 32 weeks. The court finds there is probable cause to believe a judgment will be rendered in favor of the plaintiff relevant to back wages in the amount of $21,538.24 ($35,000 + 52 = $673.07 per week x 32 weeks).
The court also finds that the plaintiff has established probable cause that his out of pocket business expenses amount to $716.53 and the court awards that amount as part of the prejudgment remedy.
The plaintiff has not established probable cause that he is due any monies relevant to sales commissions generated by him either during his employment at PetroVision or after his employment at PetroVision.
 B.
The plaintiff further claims the defendants' refusal to pay wages was wilful and plaintiff claims he is entitled to double damages and attorneys fees.
C.G.S. § 31-72 provides for a discretionary award of double damages to employees who are successful in actions against their employers for wages due. Although the statutory language does not require evidence of bad faith, arbitrariness or unreasonableness, cases interpreting and applying this statute have required such evidence. Butler v. HartfordTechnical Institute, Inc., 243 Conn. 454, 470 (1997). In an action for wages brought pursuant to C.G.S. § 31-72 awards for double damages and attorneys fees are inappropriate in the absence of the trial court's finding of bad faith, arbitrariness or unreasonableness. Sansone v.Clifford, 219 Conn. 217, 592 A.2d 931 (1991).
In the case at bar the court finds that the plaintiff has established probable cause to find the defendant's conduct was in bad faith, arbitrary and unreasonable. The defendants withheld any compensation from the plaintiff for a prolonged period (7 months). There is substantial credible evidence that the plaintiff was hired as a corporate sales manager with a base salary plus commissions. At the evidentiary hearing Blanchard testified that the plaintiff was hired as a salesperson on a sales commission basis only. This testimony of Blanchard is not credible. The defendants either never intended to pay the plaintiff his base salary or did intend to pay him his base salary at the time of plaintiff's hiring and shortly thereafter elected to substantially alter the compensation package without giving notice to the plaintiff. The plaintiff continually sought payment of his wages and was given assurances by Blanchard that he, plaintiff, would be paid his back wages. (See plaintiff's exhibits 8 and 9). No such payments were made. CT Page 11680
These factors are sufficient to establish probable cause to find the defendant acted in bad faith. Accordingly, the court finds probable cause to believe a judgment will be rendered in favor of the plaintiff in a trial on the merits for twice the full amount of such wages and finds for the plaintiff on the prejudgment remedy in the amount of $43,076.48 plus $716.53 unreimbursed business expenses. The court further finds for plaintiff interest in the amount of $4,000 and reasonable attorneys fees of $6,000. The court finds for plaintiff relevant to the prejudgment remedy in the amount of $53,793.01.
 II.
The plaintiff next claims in accord with Count Two of the complaint that he was wrongfully discharged in violation of C.G.S. § 31-51m. The plaintiff claims that he is entitled to damages computed on the basis of his $35,000 base salary for the period of time after his wrongful discharge from October 2, 1999 to May 21, 2000.[3] During this approximately 29 week period the plaintiff claims damages of $19,519.23.
C.G.S. § 31-51m reads in relevant part:
 "No employer shall discharge . . . any employee because the employee, or a person acting on behalf of an employee, reports . . . a violation or a suspected violation of any state or federal law or regulation . . . to a public body. . . ."
The court finds the following facts. The defendant did not pay the plaintiff's wages due from February 20, 1999 to plaintiff's termination October 1, 1999.
The plaintiff caused a letter (letter), dated August 12, 1999 (plaintiff's exhibit 6) to be forwarded to the Department of Labor (DOL). A copy of said letter was delivered to Blanchard on August 19, 1999. In the letter to the DOL the plaintiff relates his claim of the defendant's failure to pay his wages and calls for an investigation by DOL. On the same day Blanchard received a copy of the letter, Blanchard called the plaintiff at his home and indicated that he, Blanchard, was in the area and wanted to stop by plaintiff's home in order to pick up plaintiff's lap top computer to enable him (Blanchard) to perform a certain analysis. Blanchard said he would return the lap top computer the next day. The computer was not returned to plaintiff. On October 2, 1999, plaintiff learned he was terminated when he received a "pink slip" in the mail indicating as grounds for his termination, "Employee at Will."
The plaintiff has demonstrated that he engaged in protected activity as CT Page 11681 defined by C.G.S. § 31-51m(b) and that he was discharged from his employment. The plaintiff must also demonstrate probable cause to find that there was a causal connection between his participation in the protected activity — the forwarding of the letter to DOL — and his discharge from employment at PetroVision.
Blanchard testified that the letter to the DOL "played a role" in the plaintiff's termination of employment. There is substantial evidence produced in the hearing to demonstrate that the plaintiff, although apparently relegated to the task of performing sales only, was not successful in generating sales for PetroVision.
Neither the plaintiff nor the defendants offered the court any authority relevant to a further definition of the requirement of "causal connection." Nor has the court's research located a further explanation of the phrase in the context of C.G.S. § 31-51m. It is unclear whether the plaintiff must demonstrate probable cause that his sending the letter to DOL was the sole cause of termination or simply a factor which entered into the decision to terminate his employment.
The court is aware that C.G.S. § 31-51m is remedial in nature and as such should be read broadly in favor of those whom the law is intended to protect. Dysart Corp. v. Seaboard Surety Co., 240 Conn. 10, 18,688 A.2d 306 (1997). Accordingly, in light of the testimony by Blanchard that the letter to DOL was considered a factor in the decision to discharge the plaintiff, the court finds that the plaintiff has carried his burden and established the causal connection between plaintiff's forwarding the letter to DOL and the discharge from employment.
The court finds there is probable cause to believe that a judgment on Count Two will be rendered in favor of the plaintiff in a trial on the merits relevant to a violation of C.G.S. § 31-51m.
The plaintiff claims future earnings from time of discharge to time of new employment. The determination of future earnings requires some degree of speculation as to how long the plaintiff would have continued working for PetroVision. In order to obtain such prospective relief, it is the plaintiff's burden to present sufficient evidence for a finding of probable cause that, but for the wrongful discharge, he would have remained at PetroVision at least until May 21, 2000.
If an employer has a legitimate motive that would cause an employee's discharge, then . . . (future earnings) would go beyond making the employee whole and would unduly trammel the employer's freedom to lawfully discharge employees. See Preston v. Phelps Dodge Copper ProductsCo., 35 Conn. App. 850, 857-859. CT Page 11682
There is substantial evidence in the record that the plaintiff simply did not produce. The prospective remedy of future wage loss may be partially or totally unattainable, depending on how the plaintiff's poor performance would have affected the employment relationship. Id.
In order to sustain his claim for future wage loss the plaintiff would have to demonstrate that there is probable cause to conclude he would have remained with PetroVision during the relevant term. The plaintiff has not carried that burden. There is substantial evidence in the record of the failure of the plaintiff to generate sales that would have caused the employer to discharge the employee.
Miano, J.