[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON PLAINTIFFS' APPLICATION FOR PREJUDGMENT ATTACHMENT
The plaintiffs, Bloomingdale Road Limited Partnership and WP120 Limited Partnership, seek pursuant to Conn. Gen. Stat. § 52-278c to attach assets of the defendants, Greenwich Partners, LLC ("Greenwich Partners") and Robert Christie ("Christie"), pending a determination of the merits of their claims of breach of contract and promissory estoppel against Greenwich Partners and their claims of fraud, negligent misrepresentation, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stats. §§ 42-110a, et seq. ("CUTPA") against both defendants.
The defendants have raised the following special defenses: unenforceability of the alleged contract because of misconduct by the plaintiffs, fraud in the inducement, negligent nondisclosure, equitable estoppel, the doctrine of unclean hands, laches, and failure to mitigate damages.
The court conducted a two-day hearing, at which the parties presented the testimony of five witnesses.
Standard of Review
The issue before this court is whether either of the plaintiffs has established probable cause as to any of their claims, and the amount of damage as to which probable cause is established. Nash v. Weed Duryea,236 Conn. 746, 749 (1996); Calfee v. Usman, 224 Conn. 29, 37 (1992); NewEngland Land Co. v. DeMarkey, 213 Conn. 612, 620 (1990); Augeri v. C.F.Wooding Co., 173 Conn. 426, 429 (1977).
Section 52-278d authorizes a trial court to issue a prejudgment attachment upon a determination of "whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff." As the Supreme Court stated in Calfeev. Usman, supra, 224 Conn. 36-37 CT Page 12171
 The trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. New England Land Co. v. DeMarkey,
[supra,] 213 Conn. 620-21. The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim . . . The court's role in such a hearing is to determine probable success by weighing probabilities. Id., 620. Moreover, this weighing process applies to both legal and factual issues. Augeri v. C.F. Wooding Co.,
[supra,] 173 Conn. 429; Babiarz v. Hartford Special, Inc., 2 Conn. App. 388, 393 (1984). Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 156
(1991); see also Three S. Development Co. v. Santore, 193 Conn. 174, 175-76 (1984).
(Internal quotation marks omitted.) Although § 52-278d was amended in 1993, after the Supreme Court's decision in Calfee v. Usman, supra,224 Conn. 29, the standard of review under § 52-278d has not changed. See Nash v. Weed Duryea Co., supra, 236 Conn. 749 (1996);Bosco v. Arrowhead by the Lake, Inc., 53 Conn. App. 873, 874 (1999) (per curiam).
Breach of Contract and Promissory Estoppel
Bloomingdale Road Limited Partnership ("BRLP") is a Connecticut limited partnership with no significant assets that was created for the purpose of purchasing land and developing a retail shopping complex that was to include the purchase and leaseback of a site in White Plains, New York, on which an outmoded Saks Fifth Avenue store was already located ("Saks project"). Plaintiff WP 120 Limited Partnership ("WP 120") is a Connecticut limited partnership created for the purpose of acquiring and owning property adjacent to the Saks project. That property included an office building that was being vacated by the tenant, Nynex. The general partner of BREP is Charlie Westchester I Ltd., and the sole limited partner of BRLP is Alexius C. Conroy ("Conroy"), founder and president of Conroy Development Co. Conroy is the sole shareholder of Charlie Westchester I Ltd. He is also the sole shareholder of White Plains 120, Inc., the general partner of WP 120 Limited Partnership.
The plaintiffs allege that Greenwich Partners agreed to help them CT Page 12172 secure financing for the Saks project and failed to perform in accordance with their agreement. Greenwich Partners is an investment firm that arranges financing for public entities, institutions and developers via bond issues and private placements. The plaintiffs approached Greenwich Partners on the suggestion of their attorney, Joseph Carlucci of Cutty 
Feder Worby, a White Plains law firm. That firm suggested that financing could be obtained via bonds issued by the Westchester County Industrial Development Authority ("IDA") and directed Conroy to Greenwich Partners, which had participated in IDA bond transactions in the past. The plaintiffs had no previous dealings with Greenwich Partners, nor had they previously, participated in financing that included bonds issued by a public entity. Conroy worked with Robert Christie, executive vice president of Greenwich Partners, in trying to design a financing vehicle for the Saks project.
The amount of financing to be provided and the vehicle for providing it were the subject of many discussions and various drafts of summaries of terms. The agreement that BRLP claims required Greenwich Partners to buy the IDA bonds on issuance is Exhibit 7, a proposal dated October 17, 1997, that Conroy signed and caused to be faxed to Robert Coyne, counsel to Greenwich Partners, on December 9, 1997. (Exhibit 28.) In the October 17 proposal, Christie stated "I am pleased to inform you of Greenwich Partners, LLC's firm commitment to underwrite the above-referenced bonds." (Emphasis added.) Though Christie resisted the view that "firm commitment to underwrite" means assumption of a duty to buy those bonds that are not sold in an offering, his deposition testimony and a document detailing his firm's procedures with regard to bond transactions supports the likelihood of a conclusion that a "firm commitment to underwrite" means what BRLP claims it does, and that the term distinguishes the transaction from those in which Greenwich Partners merely commits to use its best efforts to sell the bonds to others ("best efforts financing"). For example, Exhibit 2 indicates Greenwich Partners' interest in placing" a different bond offering. In a letter dated October 14, 1997, Christie likewise stated that Greenwich Partners "is prepared to underwrite" the IDA bond offering.
On December 8, 1997, Conroy called Christie and explained that he needed a letter confirming that he would soon be receiving $500,000 from the closing of the bond issuance. Thinking that the purpose of the letter was to satisfy some creditor, Christie agreed to transfer a text provided by Conroy to Greenwich Partners' letterhead. The draft Conroy sent to Christie stated that "Greenwich Partners has agreed to purchase bond that will be issued by the Industrial Development Authority of Westchester (for the Saks project)." Christie changed the phrase to "purchase and resell" and sent it to Conroy as requested. If Greenwich Partners had agreed only to place the bonds, not to buy them itself under any CT Page 12173 circumstances, it seems most unlikely that Christie would have agreed to state such a commitment in writing, even if he understood that the purpose of the letter was to allay the concerns of a creditor, and not to memorialize the agreement between BRLP and Greenwich Partners. Christie is a sophisticated investment executive with considerable experience in dealing with bond issues. It is unlikely that, having chosen to edit the letter for accuracy, he would not have edited out the word "purchase" if the transaction did not include that obligation at all.
On October 27, 1997, Christie received an analysis from his firm's lawyer, Robert Coyne, noting that purchase of the IDA bonds for the Saks project was subject to some complications, such as a need to comply with certain federal regulations that restricted resale in several respects. Christie did not show this letter to Conroy, nor does the evidence indicate that Greenwich Partners negotiated a new proposal with BRLP after receipt of its lawyer's analysis. The documents that were prepared concerning the bond offering do not mention any obligation of Greenwich Partners to purchase unsold bonds; however, it is unclear whether such an obligation had to be reflected in documents that were concerned with the firm's relationship to IDA, not with Greenwich Partner's arrangements with BRLP.
It appears that Greenwich Partners unilaterally changed its role from underwriter to placement agent. When Attorney Coyne sent BRLP a draft of the private placement offering on December 8, 1997, Greenwich Partners was described only as a placement agent, and the text states that Greenwich Partners "agrees to use its best efforts to place" the bonds, not that it would underwrite them. Ira Kaplan, an executive at Conroy Development Co. who was working closely on the transaction with Conroy, wrote "underwriting" on this portion of the draft and sent it back to Attorney Coyne, on December 8, 1997. The next day he sent Attorney Coyne a faxed copy of the October 17, 1997 agreement. The next draft of the private placement agreement likewise identified Greenwich Partners as the placement agent, not the underwriter, for the bonds. This draft set forth the same "best efforts" role that Kaplan had identified as a misstatement a week earlier. The court was not presented with any evidence of any actual negotiations that accompanied the retention of this description of the role of Greenwich Partners.
Only one investor expressed interest in the bonds, and in an undisclosed amount. The IDA did not issue the bonds. The plaintiff did not establish the reason for the failure to issue the bonds. Louis Harthaus, who was chairman of the Westchester County IDA in 1997, testified that even if Greenwich Partners had agreed to buy all the bonds, IDA would not actually issue them unless all conditions for issuance were met. He testified that all conditions had not been met. He CT Page 12174 was not asked to state which conditions had not been met.
The plaintiff's failure to show that the bonds would have been issued constitutes a failure to establish probable cause as to its claim of breach of contract against Greenwich Partners. That firm's obligation to underwrite the offering, construed as an obligation to buy the unsold bonds, could be honored only if the bonds were actually issued.
Since the transactions at issue were between BRLP and Greenwich Partners, BRLP has demonstrated no likelihood of success on the merits of its breach of contract claim against Robert Christie individually. At all times, he was acting only on behalf of Greenwich Partners, and there is no basis for individual contractual liability.
Claims of WP 120 Limited Partnership
Though Conroy's initial discussions with Christie involved a proposal to obtain financing both for the Saks project and for the site owned by WP 120, there is absolutely no evidence that the defendants ever undertook to obtain financing for the WP 120 project or that they entered into any contract or undertook to perform services of any kind for V/P 120. The court finds that this plaintiff has failed to establish probable cause as to any of its claims.
Negligent Misrepresentation and Fraud
BRLP claims that the defendants negligently misrepresented that they would underwrite the IDA bond offering when they knew or should have known that Greenwich Partners was unprepared or unable to do so. Since there is no evidence that such alleged negligent misrepresentation proximately caused the bonds not to be issued or BRLP to fail to obtain financing, probable cause is not established as to this claim. Likewise, the plaintiffs have not shown themselves likely to be able to prove causation with regard to their claim of fraud.
CUTPA
To prevail on a claim of a violation of the CUTPA, a plaintiff must prove that it suffered an ascertainable loss through an unfair trade practice. The conduct claimed to constitute a CUTPA violation in the present case is a breach of the alleged contract to underwrite the bond issue. It is well established that a breach of contract, without substantial aggravating circumstances, does not constitute a violation of the Federal Trade Commission Act, 15 U.S.C. § 45 (a)(1). Bartolomeov. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); UnitedRoasters. Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. CT Page 12175 1981). Conn. Gen. Stat. § 42-110b (b) provides that in interpreting CUTPA, Connecticut's courts shall be guided by interpretations given by the federal courts and the Federal Trade Commission to Section 5(a)(1) of the Federal Trade Commission Act. See Emlee Equipment Leasing Corp.v. Waterburv Transmission, Inc., 41 Conn. Sup. 575, 580 (1991).
Proof of Damages
Even if this court found that BRLP had established probable cause with regard to any of its claims, BLRP failed to provide evidence upon which this court could reasonably determine damages within the standard of proof for a prejudgment attachment. Ira Kaplan, the sole witness presented on the subject of damages, offered an analysis that was based on extremely speculative assumptions, particularly, the projected sale of the Saks project in three years for $100 million. His analysis assumed completion of construction in a year, that the complex would be fully leased, and that the rents would be optimal. The analysis that preceded his conclusion that BRLP had been damaged in the amount of $35 million was so cursory that it varied by many millions from an analysis which had been substantially shaken by questioning at his deposition by defendants' counsel. Even if probable cause had been established as to liability, the court finds that the evidence provided on the issue of damages was so spectulative and unreliable that it would not have enabled the court to find probable cause that the plaintiff had suffered damages in a particular amount, a necessary finding. Conn. Gen. Stat. § 52-278d;Mullai v. Mullai, 1 Conn. App. 93, 95 (1983), citing Essex Group, Inc.v. Ducci Electric Co., 181 Conn. 524, 525 (1980) (per curiam). SeeLedgebrook Condominium Assn., Inc. v. Lusk Corp., 172 Conn. 577, 585
(1972).
Conclusion
The application of Bloomingdale Road Limited Partnership and of V/P 120 Limited Partnership for a prejudgment attachment of assets of Robert Christie and Greenwich Partners, LLC is denied for the foregoing reasons.
Beverly J. Hodgson Judge of the Superior Court