JAMES F. SULLIVAN, ADMINISTRATOR, *vs.* THE
MERCHANTS NATIONAL BANK.

Third Judicial District, Bridgeport, October Term, 1928.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 23d—decided December 18th, 1928.

*Ellsworth B. Foote,* with whom was *William L. Hadden* and, on the brief, *David E. Fitzgerald,* for the appellant (plaintiff).

*Ralph H. Clark,* for the appellee (defendant).

WHEELER, C. J.   The single question for decision is as to the right of the defendant bank to set off against the deposit of the insolvent decedent with it the amount due on two promissory notes of the insolvent held by it and not due at his death.

Under the common law, where two persons held mutual debts against the other each must be prosecuted separately.   The right of set-off of mutual debts was a doctrine of courts of equity, which came to hold that mutual debts should be set off against each other and only the balance recovered.   Its foundation was "the prevention of circuity of actions," and its allowance in equity is the rule unless resulting injustice to third parties, who have acquired rights from the defendant, raises a more impelling equity.   Long before statutes of set-off were enacted, courts of equity recognized and enforced the right of set-off.   We have held that our statute of set-off, General Statutes, §5674, must be read in connection with the broader provisions of our Practice Act (General Statutes,

§5635). *Hubley Mfg. & Supply Co.* v. *Ives,* 81 Conn. 244, 247, 70 Atl. 615; *Harral* v. *Leverty,* 50 Conn. 46, 61. "Mutual debts . . . are cross debts in the same capacity and right and of the same kind and quality." *Lippitt* v. *Thames Loan & Trust Co.,* 88 Conn. 185, 90 Atl. 369.

It is generally held that set-off under the ordinary statute applies to debts which are present obligations, not to debts of which, though otherwise mutual, one of them is not yet due. *Henry* v. *Butler,* 32 Conn. 140.

The plaintiff is the administrator of an insolvent decedent whose claim against the defendant for the balance of a bank deposit is due; the defendant is a bank holding notes against the insolvent decedent which were not due at the death of the decedent. These debts could not be set off under our statute. If the right exists it must be found in those equitable principles out of which the right of set-off grew, which were not restricted by the statute to its own limits, but which exist in all the power they have ever had to serve in situations of hardship and injustice.

We have recognized and sought the aid of equity to accord a set-off where our statute was found impotent to grant it. A petitioner who was insolvent and the sole owner of a mortgage note brought his action for a foreclosure of the mortgage against the respondent, who was not the original mortgagor, but the sole owner of the equity of redemption, who must either pay the note or lose the property. "It was therefore," we said, "in some sense a debt due from her. She at the same time had a claim against the petitioner which she could not collect in any form of action for the reason that he was insolvent." The respondent was allowed to set off her demand against the petitioner's claim. We held: "We think the set-off was properly allowed. Courts of equity in the matter of set-off usually follow

the law; but in many cases, where there is some intervening equity, they will allow a set-off where a court of law would not." That equity we found in the maxim that he who seeks equity must himself do equity. "There would," we continue, "be less reason for applying the maxim if the petitioner was solvent, although even in that case there would be no injustice in it. But being insolvent, the case presented is one where the 'natural equity' is very strong. Insolvency of itself will often raise an equity which will justify the interference of the court, even when the party desiring the set-off is himself the petitioner." *Goodwin* v. *Keney*, 49 Conn. 563, 569.

The precise question for decision has not been adjudicated in this jurisdiction. The debts between these parties are subsisting obligations: that to the insolvent was presently due at the time of the insolvency, those to the bank were payable at a future time.

When a creditor's debt to the insolvent is not yet payable while the insolvent's debt to the creditor is payable, the authorities are in practically complete harmony in allowing the set-off of these debts. But where the creditor's debt to the insolvent is due and the insolvent's debt to him is not due, the authorities are divided, the weight of authority being in favor of allowing the set-off.

In the first of these classes, the set-off is sometimes allowed upon the theory that the insolvent is entitled to waive the time of payment, since it was for his benefit. Both debts thus becoming present debts, equity allows the set-off. *Lindsay* v. *Jackson*, 2 Paige (N. Y.) 581, 585; *Scott* v. *Armstrong*, 146 U. S. 499, 13 Sup. Ct. 148.

The receiver of his own volition had no power to change the contract any more than a party to it could. A breach of contract seems an indefensible basis for

the interposition of equity. Analyze this theory of waiver, as we will, we find no equity hidden within.

The more common foundation for according the set-off is the fact of insolvency. That has changed the situation. Upon the adjudication of insolvency, the debt to the insolvent must be paid in full; if the debt in his favor may not be set-off against the debt owed by him, it would result in this debt merely receiving its pro rata share of the insolvent's estate. If the debt not yet due bears interest, equity may make proper allowance. *Schuler* v. *Israel,* 120 U. S. 506, 7 Sup. Ct. 648. If no rights of third parties are affected and no superior equity arises out of the contract of the parties under the particular circumstances of the transaction, the fact that both debts are subsisting debts and only by allowing their set-off can they be treated upon an even basis and the owner of the debt not yet due escape an unjust loss, creates the equity upon which the allowance of the set-off rests.

We held in the early case of *Pond* v. *Smith,* 4 Conn. 297, 302, that the insolvency of one of the parties was a sufficient ground in equity to set off demands which in law were incapable of being set off.

This is not a change of the contract of the parties, as some think, but the making of the contract conform to this equitable rule of law, in the knowledge of which, either actual or constructive, the contract must be assumed to have been made. The equitable situation is not changed as we view it, when the debt to the insolvent is due but that from him is not due. If the conditions were changed and the creditor to whom he was indebted was the insolvent, he could avail himself of the set-off. As the insolvent he could demand full payment of his debt, while his creditor must take his pro rata share of the insolvent's estate. Both of the debts were subsisting debts; in the first class of

cases to which we referred we considered that it would be inequitable to exalt the debt of the insolvent and destroy that of his creditor.

Unless there be the fact of insolvency or an equivalent equity, the debt which has not matured cannot be set off against the debt which has. The allowance of the set-off does not violate the contract by anticipating the time of payment by act of one of the parties. The rule of equity decrees it and the contract was made subject to this rule.

It is sometimes said the allowance of the set-off does an injustice to the creditors of the insolvent who are entitled to an equal share of all of his estate, which gives them an equity superior to the equity of the creditor to his set-off. *Fera* v. *Wickham*, 135 N. Y. 223, 31 N. E. 1028, is perhaps the leading case in advocacy of this doctrine. The answer is not hard to find. The equity of the general creditor is in the balance remaining after the set-off. It does not begin until the set-off has taken place. The equity of the creditor of the insolvent is not only superior in time but superior in merit to that of the general creditors.

When we speak of the insolvency of this debtor we must be understood to refer to his insolvency predicated upon an adjudication of insolvency. The rule of equity should not be stretched to cover a case where the debtor was in fact insolvent, but not so confessed or found in a legal proceeding. Sufficient remedies are open to the creditor to protect his rights prior to the adjudication of insolvency, but when that adjudication is made the creditor's remedies are at an end; he has no protection, unless equity intervenes, save to receive his pro rata share of the insolvent's estate. The practical difficulty of making the right of set-off dependent upon the fact of insolvency instead of the adjudication of insolvency, seems apparent and serious.

The position of the Massachusetts court is in accord with our view. *Wiley* v. *Bunker Hill Nat. Bank,* 183 Mass. 495, 67 N. E. 655.

The allowance of a set-off in bankruptcy cases is a settled practice. We uphold it in *Goodrich* v. *Dobson,* 43 Conn. 576, 578.

The equitable considerations are stronger in the case of mutual debts, one of which is not yet due, between a bank and a depositor than in the other cases. The deposits of the depositors belong to the bank. The depositor has merely a claim against the bank for the balance of his deposits. The commercial bank receives in a trust relation the deposits of its customers for its use upon an implied agreement to repay the balance of them due on demand. If it is compelled to pay in full an insolvent depositor's present claim and cannot set off against this the debt of the insolvent to it, because it is unmatured, the bank must accept its pro rata share of the insolvent's estate and there will be that much less to meet the claims of its depositors. Note, 25 L.R.A. (N.S.) 396.

The business of the bank is a private business, but one affected with a large public interest and subject to public supervision. The community is vitally interested in its solvency. The equitable considerations are more far reaching and urgent than in the case of mutual dealings between mere individuals. In a note to *Richardson* v. *Anderson,* 25 L.R.A. (N.S.) 396 (109 Md. 641, 72 Atl. 485), it is said: "Substantially all the cases sustaining this right of set-off" were "cases between a bank and its depositors." We do not purpose an analysis of the cases which sustain, and those which oppose, the right of set-off in this case. We have discussed the reasons underlying these decisions. We cite some of the principal authorities supporting our main position: *Scott* v. *Armstrong,* 146 U. S. 499, 507, 13

Sup. Ct. 148; *Schuler* v. *Israel*, 120 U. S. 506, 7 Sup. Ct. 648; *Hayden* v. *Citizens Nat. Bank*, 120 Md. 163, 167, 87 Atl. 672; *Colton* v. *Drovers' P. B. & L. Asso.*, 90 Md. 85, 45 Atl. 23; *Nashville Trust Co.* v. *Fourth Nat. Bank*, 91 Tenn. 336, 18 S. W. 822; *Kentucky Flour Co.'s Assignee* v. *Merchants' Nat. Bank*, 90 Ky. 225, 13 S. W. 910, and *Wunderlich* v. *Merchants Nat. Bank*, 109 Minn. 468, 124 N. W. 223; notes to 46 L.R.A. (N.S.) 1060, 25 L. R. A. (N.S.) 393, and 17 L. R. A. 456, contain a full citation of the cases upon this point.

This is no error.

In this opinion the other judges concurred.