[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The complaint in this action alleges that on or about December 24, 1991 the defendant, First Bank of West Hartford ("First Bank"), wrongfully exercised a right of setoff against the funds of the plaintiff, Stoner Group, Inc. ("Stoner"). It further alleges that the wrongful setoff constituted a breach of the defendant's fiduciary duty to the plaintiff, a breach of the defendant's fiduciary duty to the plaintiff, a breach of the covenant of good faith and fair dealing and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), Connecticut General Statutes 42a-110a et seq.[1] Stoner seeks an injunction mandating the release of all of its funds on deposit with First Bank as of December 23, 1991.
Based on the evidence introduced at trial, the court finds the following facts. On December 23, 1991 Stoner, a real estate development company, was indebted to First Bank in the amount of $596,830.39. The indebtedness arose from three promissory notes. The first, dated August 5, 1988, was in the original principal amount of $200,000. The second, dated September 16, 1988, was in the original principal amount of $100,000. Each of the foregoing notes was secured by mortgage on real property in Burlington, Connecticut, and contained the following setoff language:
 The Maker gives the Bank a lien and right of setoff for all the Maker's liabilities upon and against all the deposits, credits and property of the Maker and any other collateral of the Maker now or hereafter in the possession or control of the Bank or in transit to it.
The third promissory note dated November 1, 1990 was in the original principal amount of $300,000, and was secured by a mortgage on real property in West Hartford and contained the following setoff language:
 The holder hereof shall have a lien and a right of set-off for all liabilities arising out of the loan evidenced by this note, upon and against all deposits, credits and property of the maker and all guarantors now or hereafter in the possession or control of the holder or in transit to it. The holder may at any time after CT Page 7075 default without first resort to any collateral, apply all or any part of said deposits, credits and property to maker's and guarantors' liability hereunder.
Prior to December, 1991, Stoner's checking account with First Bank had been inactive for approximately eighteen months. However, shortly before December 23, 1991 Stoner deposited approximately $160,000 into its First Bank checking account and wrote approximately $160,000 of checks on the account. The checks were primarily written to Stoner's subcontractors and suppliers. However, one check in the amount of $24,750 was payable to Stoner.
Stoner reactivated its checking account with First Bank because it owed substantial sums of money to the banks where it maintained its regular accounts. Stoner's obligations to those banks were in default and it knew that those accounts were subject to setoff. Therefore, Stoner moved funds into First Bank in order to avoid set-off of those funds by its regular banks.
On December 19, 1991 a member of First Bank's board of directors informed William McDougall, First Bank's president, that he had information that Stoner was not paying its trade creditors. On December 23, 1991 McDougall spoke with David Stoner, Stoner's president, by telephone. David Stoner informed McDougall that Stoner was "at the end of its line." McDougall and Francis Wamester, an officer of First Bank, met with David Stoner and Melvin Stoner, a principal of Stoner, on the evening of December 23rd. At this meeting the Stoners told McDougall and Wamester that Stoner was in default on other bank loans and was unable to make approximately $500,000 of payments owed to trade creditors. The plaintiff admitted that it was insolvent at that time.
Thereafter the defendant set off $119,259.16 in the plaintiff's checking account to be applied toward the amounts owed by the plaintiff under the three aforementioned promissory notes. After the setoff, the defendant returned $117,930.54 in checks which the plaintiff had written on its checking account. The defendant placed the words "refer to maker" on the returned checks rather than "insufficient funds" in an attempt to give the plaintiff an opportunity to explain to its creditors the reason for the returned checks.
The Expedited Funds Act 12 U.S.C. § 4002 required the defendant to process a check, or return it within a specified period. The defendant failed to return certain checks within the time required by the Expedited Funds Act. Therefore, the CT Page 7076 defendant ultimately paid all those checks, totalling $30,349.71. The total setoff amount was, thereby, reduced to $88,909.45 of which $59,280.24 was applied to reduce the $200,000 note, $27,175.04 was applied to reduce the $100,000 note and $2,454.17 was applied to reduce the $300,000 note.
At common law a bank has an equitable right to setoff against a debt presently due to a depositor the amount of a debt not presently due from a depositor upon the depositor's (1) confession of insolvency or (2) adjudication of insolvency in a legal proceeding. Sullivan v. Merchants National Bank,108 Conn. 497, 502, 503, 114 A. 34 (1928).
The court in Sullivan provided the following rationale for the right of setoff:
 Where one party seeks to setoff a debt against a party who is insolvent, the case is one where "natural equity" is very strong. 108 Conn. at 501.
 If no rights of third parties are affected and no superior equity arises out of the contract of the parties under the particular circumstances of the transaction, the fact that both debts are subsisting debts and only by allowing their setoff can they be treated upon an even basis and the owner of debt not yet due escape an unjust loss, creates the equity upon which the allowance of the setoff rests. 108 Conn. at 502.
Courts in other jurisdictions have recognized a bank's rights to exercise a setoff in payment of an unmatured debt of an insolvent debtor. Carr v. Hamilton, 129 U.S. 252 (1889); Control Leasing Partners v. Executive Service Corp., 688 P.2d 765,768 (Nev. 1984); Korlam v. E.Z. Pay Plan, Inc., 247 Or. 170,428 P.2d 172 (1967); Salaman v. Bolt, 74 Cal.App.3d 907,918 (1977); American Surety Co. v. de Escalada, 47 Ariz. 457,56 P.2d 665 (1936); Sharpe v. Metropolitan National Bank, 503 P.2d 1043
(Colo.App. 1972).
In Sullivan the notes from the insolvent borrower to the bank, apparently, did not contain any language concerning setoff. In this case the promissory notes do contain setoff language. A promissory note between the original parties to the note is interpreted under the fundamental principles of contract law. Appliances, Inc. v. Yost, 181 Conn. 207, 211, 435 A.2d 1 (1980).
The setoff language in the $100,000 and $200,000 promissory notes gives the defendant "the right of setoff for all the maker's liabilities." Those notes contain no limitation on the CT Page 7077 right of setoff. That is, they do not specify that default, insolvency or even the bank's deeming itself insecure must exist before the bank can setoff against Stoner's funds. Therefore, under the $100,000 and the $200,000 promissory notes, the only limitation on First Bank's right of setoff is that it be exercised in good faith under Section 42a-1-204 of the Connecticut General Statutes (Uniform Commercial Code) which provides, "every contract or duty within this title imposes an obligation of good faith in its performance or enforcement."
In the present case the defendant did not exercise its right of setoff until after it had received verbal confirmation from the plaintiff that the plaintiff was insolvent. Melvin Stoner confirmed at trial that the plaintiff was insolvent as of December 23, 1991, the setoff date. Therefore, defendant's setoff was permissible both under the common-law as recognized in Sullivan and under the setoff language of the $100,000 and $200,000 promissory notes.
The language of the $300,000 promissory note, arguably, provides that the defendant could exercise its right of setoff only after default. The $300,000 note was not in default on the date of setoff.
It is not clear from the evidence which setoff provision the defendant exercised in this case. However, both the $100,000 and the $200,000 promissory notes authorized the setoff "for all the maker's liabilities," including, presumably, the liability represented by the $300,000 note.
The plaintiff has also claimed that the setoff was improper because the funds set off by the defendant were in a "special purpose account." In Rosa v. Colonial Bank, 207 Conn. 483, 495,542 A.2d 1112 (1988) the court defined a "special purpose account" as follows:
 "A special purpose account [however] is generally one over which the depositor has only limited dominion and control. The deposit is usually made with special restrictions or limitations agreed upon between the bank and depositor. Accounts specially designed for the depositor's accounting purposes, such as separate `Payroll Account,' or deposits the depositor plans to use for a special purpose will not be considered special accounts for the purposes of setoff, even if the bank knows of the intended special use, if the depositor retains unlimited dominion over the account." J. TeSelle, supra, 46; accord In re Goodson Steel Corporation, 488 F.2d 776 (5th CT Page 7078 Cir 1974); Ribaudo v. Citizens National Bank, 261 F.2d 929 (5th Cir. 1958); United States v. Tri-County Bank, 415 F. Sup. 858 (D.S.D. 1976). Common examples of special purpose accounts include payroll accounts in which the bank agrees to honor only certain checks payable to the depositor's employees' In re Goodson Steel Corporation, supra; and trust or escrow accounts in which the bank has notice of third parties' interests in the account. First National Bank Trust Co. v. Osage Supply Co., 186 Okla. 259, 260-6;, 97 P.2d 3 (1939). (emphasis added).
The plaintiff's account with the defendant was not a "special purpose account" within the meaning of the Rosa case.
The plaintiff has alleged that by exercising a setoff, the defendant breached a fiduciary duty which it owed to the plaintiff. The plaintiff has conceded that in the usual case, a bank does not owe its depositor a fiduciary duty. See Frigon v. Enfield Savings and Loan Assoc., 195 Conn. 82, 87, 486 A.2d 630
(1985); Monachelli v. Mechanics Farmers Savings Bank, 13 Conn. App. 662,666, 538 A.2d 1089 (1988). However, the plaintiff claims that the case involves exceptional circumstances. It relies on Dunham v. Dunham, 294 Conn. 303, 528 A.2d 1123 (1983) wherein the court held that a fiduciary duty could arise where there is "justifiable trust" on one side and a "resulting superiority and influence" on the other. Stoner also argues that a fiduciary relationship can exist if there are special circumstances in which there are exclusive and repeated dealings with the bank. Pulse v. North America Land Title Co. of Montana, 218 Mont. 275, 707 P.2d 1105 (1985).
The evidence presented at trial was completely devoid of any facts upon which the court could find either a relationship of special trust or repeated and exclusive dealings between the parties. Stoner generally conducted its banking business with banks other than First Bank. It had reactivated its account with First Bank after eighteen months of dormancy, to avoid setoff by its primary banks. The plaintiff claims that its "confiding" the fact that it was insolvent to First Bank officers evidences a confidential relationship. This claim overlooks the fact that the plaintiff informed the defendant of its insolvency only in response to a direct inquiry or inquiries by First Bank.
Stoner has also claimed that First Bank has violated the covenant of good faith and fair dealing by exercising the setoff. First Bank had both a contractual and equitable right of setoff and it exercised that right in a reasonable manner. CT Page 7079 Therefore, it did not violate the covenant of good faith and fair dealing.
The plaintiff claims that the defendant's wrongful exercise of its right of setoff constituted an unfair act or practice within the meaning of Connecticut General Statutes 42-110a
et seq., the Connecticut Unfair Trade Practice Act (CUTPA). The parties disagree as to whether CUTPA applies to the actions of banks. This court need not reach that issue because the actions of the defendant in legally exercising a right of setoff did not constitute an unfair act or practice under CUTPA.
For the reasons set forth above judgment may enter in favor of the defendant on the complaint. The parties have agreed that the defendant's counterclaim is stayed by virtue of 49-28 of the Connecticut General Statutes due to the pendency of a foreclosure action on mortgages securing the promissory notes from Stoner to First Bank. Therefore, the court awards no judgment on the counterclaim.
AURIGEMMA, J.