[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PREJUDGMENT REMEDY
The plaintiff seeks a prejudgment remedy in the form of a real estate attachment against the subject real property. The plaintiff, a commercial tenant, who vacated the premises in Stamford, Connecticut owned by the defendant at the expiration of a commercial lease seeks money damages on a number of theories. The plaintiff seeks a return of the security deposit of $24,375. The plaintiff seeks money damages for the defendant's failure to permit the plaintiff to remove certain air, conditioning and other electrical systems from the premises at the end of the lease. The plaintiff also seeks money-damages, attorney's fees and punitive damages under the Connecticut Unfair Trade Practices Act (CUTPA).
A hearing was conducted on seven dates. The court has reviewed the evidence, testimony of witnesses, the memorandum filed by the parties as well as the claims of law made by each of the parties. CT Page 7402
DISCUSSION OF LAW
The prejudgment remedy statute was modified by P.A. 93-431 effective January 1, 1994. Although the lawsuit was filed prior to January 1, 1994 the parties agreed that the PJR standards of Connecticut GeneralStatutes § 52-278a et seq. as modified by P.A. 93-431 would apply.Connecticut General Statutes § 52-278d(a) provides that a trial court may issues a PJR if it determines that there is "probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims, or set-offs, will be rendered in the matter in favor of the plaintiff". If the court finds that the application for the prejudgment remedy should be granted the court shall determine "whether the plaintiff should be required to post a bond to secure the defendant against damages that may result from the prejudgment remedy or whether the defendant should be allowed to substitute a bond for the prejudgment remedy." Connecticut GeneralStatutes § 52-278d(a)(4).
"The plaintiff does not have to establish that he will prevail, only that there is probable cause to the sustain the validity of the claim." Ledgebrook Condominium Association, Inc. v. Lusk Corporation,172 Conn. 577, 584 (1977); Calfee v. Usman, 224 Conn. 29, 37 (1992). "The court's role in such a hearing is to determine probable success by weighing probabilities." Michael Papa Associates v. Julian, 178 Conn. 446,447 (1979); Three S. Development Co. v. Santore, 193 Conn. 174,175-176 (1979); New England Land Ltd Co. v. DeMarkey, 213 Conn. 612, 620
(1990).
Probable Cause under Connecticut General Statutes § 52-278d(a) has been held to be "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment under the circumstances in entertaining it." Wall v. Toomey, 52 Conn. 35, 36 (1884). Probable cause is a flexible common sense standard. It does not demand that the belief be correct or more likely true than false. Texas v. Brown,460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. New England Land Co. Ltd. v. DeMarkey, supra 620.
Prejudgment remedies are available to obtain security for damages arising out of the breach of a commercial lease. Fischel v. TKPK, Inc.34 Conn. App. 22, 25 (1994). "The court's role in such a hearing is to determine probable success by weighing probabilities." Calfee v.CT Page 7403Usman, supra 37; Fischel v. TKPK, Inc., supra 24.
Prior to January 1, 1994 the PJR statute required the plaintiff to prove "whether or not there is probable cause to sustain the validity of the plaintiff's claim" at trial. Connecticut General Statutes § 52-278d,(a)(1), P.A. 93-431, Fischel v. TKPK, Inc., supra 26. The standard now is "whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the prejudgment remedy sought, taking into account any defenses, counterclaims, or set-offs, will be rendered in the matter in favor of plaintiff." Connecticut General Statutes § 52-278d(a)(1). Two other additions made to the statute in subdivisions (2) and (3) relating to and exemptions from executions are irrelevant to this case. bonding provision was added in subdivision (4). Connecticut GeneralStatutes § 52-278d(a)(4). The factors that courts should consider regarding the posting of a bond were also added. Connecticut GeneralStatutes § 52-278d(d)(e) and (f) P.A. 93-431.
Despite extensive amendments and the enactment of new proof requirements at the PJR hearing as well as the new bond procedures, the legislature did not change the requirements of probable cause. Therefore this court concludes that the same pre January 1994 probable cause standards continue to be in effect. Ledgebrook CondominiumAssociation Inc. v. Lusk Corporation, supra 584. New England Land Co.Ltd. v. DeMarkey, supra 620; Three S. Development Co. v. Santore, supra 175-176; Calfee v. Usman, supra 37; P.A. 93-431 did not change the probable cause standards of a prejudgment remedy hearing.
The plaintiff still has the burden of proof as to probable cause as to each of the elements of its complaint. Connecticut General Statutes§ 52-278d(a), Swift Coe v. Rexton, Inc., 187 Conn. 540, 543 (1982). The defendant has the burden of proof to show defenses, counterclaim or set-offs thus reducing the amount of the PJR. Connecticut General Statutes§ 52-278d(a), Practice Book § 164 and § 168, Connecticut GeneralStatutes § 52-139 to Connecticut General Statutes § 52-142.Sullivan v. Merchants National Bank, 108 Conn. 497, 500 (1928). Lynch v.Granby Holdings, Inc., 37 Conn. App. 846, 851 (May 16, 1995)
The credibility of witnesses is entirely a matter for the discretion of the trier who alone can observe the witnesses and draw inferences from their demeanor. Piantedosi v. Floridia, 186 Conn. 275,277 (1982). The court must weigh and interpret the evidence before it.Smith v. Smith, 185 Conn. 491, 493 (1981). The court can accept entirely, reject entirely or accept some and reject some of a witness's testimony. Northeastern Gas Transmission Co. v. Tersana Acres, Inc.,
CT Page 7404144 Conn. 509, 512 (1957). This rule also applies as to the testimony of expert witnesses. National Folding Box Co. v. New Haven, 146 Conn. 578,586 (1959); State v. Davis, 158 Conn. 341, 356 (1969). This rule applies as to portions of an expert's testimony regarding alternative methods of appraising market value of property. Clark v. Haggard,141 Conn. 668, 674 (1954); Morgan v. Hill, 139 Conn. 159, 161 (1952). The trial court's acceptance and use of the testimony of an expert on some points does not preclude its rejection on others. Caplan v. Arndt,123 Conn. 585, 586 (1938); Morgan v. Hill, supra 162.
The court is being asked in this case to determine by probable cause standards various elements of damages which represents the plaintiff's claims and the defendant's counterclaims, defenses, and set-offs. Included in those claims are; the utilization of various depreciation schedules used to determine the fair market value of the air conditioning and other electrical systems, the cost of the removal of those systems, the restoration of that portion of the building to its former state, damages to the premises caused by the plaintiff and its agents, the cost of removal of the plaintiff's improvements and fixtures left behind, the restoration of the premises to its preleased condition, ordinary wear and tear excepted, punitive damages under CUTPA and attorney's fees. Experts and owners offered divergent testimony as to these elements of damages.
"Where damages are appropriate but difficult to prove the law eschews the necessity of mathematical exactitude. Such exactitude in the proof of damages is often impossible, and . . . all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which enable the trier make fair and reasonable estimate." (Internal quotations marks omitted.)Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276,285 (1994), Dooley v. Leo, 184 Conn. 583, 587 (1981).
"In determination of the fair market value, the trial court in a condemnation appeal hears the matter in de novo . . . and makes an independent determination of the value and fair compensation in light of all circumstances, the evidence, the trial court's general knowledge and the court's viewing of the premises." Gasparri v. Department ofTransportation, 37 Conn. App. 126, 130 (1995). "In determining the fair market value of a business the trial court is vested with broad discretion. No one appraisal method is binding on the court and the court has the right to accept so much of the expert testimony and the recognized appraisal methods which are employed as it finds applicable."Federated Department Stores, Inc. v. Board of Tax Review, 162 Conn. 77,86 (1971). CT Page 7405
The court concludes that these standards apply to the determination. of fair market values by the court whether it be real property or personal property. This includes a municipal tax appeal, condemnation this case, evaluation of a business, determination of fair market rent or price under an arbitration clause in a lease or purchase contract or in this case, the fair market value of used air conditioners and electrical equipment. Laurel, Inc. v. Commission of Transportation, 180 Conn. 11,37-38 (1980), Greenfield Development Co. v. Wood, 172 Conn. 446, 451
(1977); South Farms Associates Ltd. Partnership v. Burns, 35 Conn. App. 17,18 (1994), Stanley Works v. New Britain Redevelopment Agency,155 Conn. 86, 99 (1967); Bennett v. New Haven Redevelopment Agency,148 Conn. 513, 516 (1961), John F. Epina Realty v. Space Realty, Inc.,194 Conn. 71, 84 (1984), DeLucia v. Burns, 11 Conn. App. 439, 443 (1987),Minicucci v. Commissioner of Transportation, 211 Conn. 382, 388 (1989).
FACTS
On April 13, 1983 the plaintiff as tenant and the defendant as landlord entered into a 10 year lease for a large commercial manufacturing premises located in Stamford, Connecticut. The lease ended June 30, 1993. The plaintiff entered into occupancy and conducted its paper box manufacturing and distribution business from the premises. On May 29, 1986 the plaintiff sublet almost the entire premises to Dress Barn, Inc. a nationwide clothing business, retaining the use of a small office space. The assignment of this lease to Dress Barn, Inc. was with the prior consent of the defendant landlord. The plaintiff continued to pay rent to the defendant and to receive the higher sublet rent from Dress Barn, Inc. The sublease ended on May 31, 1993.
At the inception of the main lease, with the defendant's knowledge and consent the plaintiff installed a large roof air conditioning system covering a substantial portion of the premises. It also constructed and installed drop lines for power to the manufacturing floor of the factory and warehouse as well as various alarm, lighting, electrical and fire systems.
Paragraph Forty-Second of the main lease between the plaintiff and defendant stated:
 "Anything to the contrary herein before contained in Paragraph Fifth hereof notwithstanding, any installations made by the Tenant in the demised premises, including but not being limited to trade fixtures, office equipment, machinery, lighting fixtures, electric hydraulic and or pneumatic CT Page 7406 equipment and controls, heating, air-conditioning equipment, air compressors, shelving, conveyors, temporary partitions, window, wall and floor coverings, may be removed by the Tenant at any time during the Lease term or at the termination of the lease, provided that the Tenant, at its own cost and expense, shall restore the demised premises to their original condition, including, but not limited to, the replacement of any and all original items removed by the Tenant."
There was no separate security deposit posted or required for the compliance with this particular paragraph. A standard security deposit paragraph was contained in the main lease and the plaintiff deposited $24,375.00 as security deposit with the defendant. The plaintiff obtained a security deposit in the amount of $29,950.00 from the subtenant, Dress Barn, Inc. which it continues to hold to date.
The original lease terminated in accordance with its terms on June 30, 1993. The plaintiff's sublease with Dress Barn terminated in accordance with its original terms on May 31, 1993. The purpose of this one month hiatus was so that the plaintiff would have adequate time to remove the air conditioning and other electrical installations and restore the property to its former condition. The plaintiff expected that Dress Barn, Inc. would vacate on May 31, 1993 so that the plaintiff would have access to the premises, remove the equipment, restore the premises, and thus obtain the return from the defendant of the $24,375.00 security deposit by June 30, 1993.
On January 22, 1993 the plaintiff notified the defendant by letter that the Dress Barn, Inc. sublease expired on May 31, 1993, the main lease expired on June 30, 1993, and the plaintiff intended to access the premises during June 1993 to remove its installations, restore the premises to its former condition all by June 30, 1993. There was no response. On April 4, 1993 the plaintiff notified Dress Barn, Inc. of its obligation to vacate so the plaintiff could remove the installations and restore by June 30, 1993.
At this point a series of correspondence ensued between the parties including Dress Barn. The plaintiff extended the sublease to Dress Barn to June 30, 1993 and Dress Barn did not then vacate. The defendant after June 30, 1993 permitted Dress Barn to occupy the premises. There is no evidence which indicated whether or not there was any formal agreement between the defendant and Dress Barn for that occupancy. The court infers that reasonable use and occupancy was paid by Dress Barn to the defendant at a rate equivalent to the sublease rent. The court also infers that the defendant benefitted [benefited] from Dress Barn's continued post CT Page 7407 lease occupancy of the property and thus was able to receive a higher rent. The plaintiff did not receive nor was it tendered any further monies after June 30, 1993 from Dress Barn, Inc.
The plaintiff claims that it had a purchaser of the air conditioning and other electrical equipment at the time of the lease expiration. Although the testimony was vague it was agreed by all parties that these no was agreed sales price. The plaintiff testified that no other purchaser is available for the the air conditioning and electrical equipment. The plaintiff further testified Chaspek manufacturing Corporation no longer is in existence and its only asset is the proceeds of this lawsuit.
On or about November 1, 1993 the Dress Barn vacated the premises. Dress Barn then commenced a lawsuit against Chaspek Manufacturing Corporation, the plaintiff herein, and sought the return of its security deposit from the plaintiff. A garnishment of the security deposit was ordered in that lawsuit. The plaintiff continues to hold the $29,950.00 Dress Barn, Inc. security deposit under that garnishment.
The plaintiff claims that it is entitled to money damages by reason failure of the defendant to return the security deposit. It also is entitled to an award of the market value of the air conditioning and electrical systems less the removal costs. It further claims that the market value of that equipment was supported by the testimony of its expert, Mr. Bernard Sencer. The plaintiff claims that there were no physical damages to the premises when the main lease ended on May 31, 1993. Any damages to the premises were caused by and have to be paid by Dress Barn, Inc. who was in actual possession of the premises. The plaintiff further claims that there was a determined effort by the defendant in collusion with Dress Barn, Inc. resulting in the failure return the security deposit and refusal of access to the premises to remove the air conditioning and electrical equipment during the period that Dress Barn was in occupancy. The plaintiff further claims that during that period of time the prospective purchaser no longer became interested in purchasing the air conditioning and the other equipment. The plaintiff claims that these acts are violations of Connecticut Unfair Trade Practices and entitle the plaintiff to attorney's fees and punitive damages.
The defendant claims that the plaintiff's premises has not been damaged since it is holding the $29,950.00 security deposit from Dress Barn, Inc. The defendant further claims that they were entitled to withhold the security deposit until the removal of the air conditioner, and other equipment since their removal would cause damage to the CT Page 7408 building. Upon vacating of the premises by Dress Barn, Inc. the defendant gave permission to the plaintiff to remove the air conditioning and other equipment. The plaintiff then failed to remove. The plaintiff therefore has not mitigated its damages. The defendant claims that the plaintiff has not offered adequate credible evidence as to the market value of the air conditioning and electrical equipment. There is no market for said equipment and thus its market value is zero. Full depreciation of the air conditioning has taken place and the fair market value of the air conditioner is zero. It would cost more to remove the air conditioning and other systems then could be obtained either on the open market or by any other appraisal method. The defendant further claims that there are damages to the building which requires substantial monies to be expended to repair, i.e, holes in the wall, partitions and fixture removal, and other repairs. The defendant offered a contractor's testimony in support of these claims.
The plaintiff's President, Geroge Peckar, testified as to the value of the air conditioning and other systems that were on the premises. The owner is entitled to testify as to the value of his personal property. Saporiti v. Austin A. Chambers Co., 134 Conn. 476, 479
1948). An owner is also entitled to testify as to the value of real property and presumably the value of additions and improvements made by the owner to the real property. Lovejoy v. Darien, 131 Conn. 533, 536
(1945). It has been held that the ownership of the property is the only necessary qualification and no expert testimony is needed in that regard. Anderson v. Zweigbaum, 150 Conn. 478, 483 (1963).
The defendant cross-examined the plaintiff's President who admitted that there was no specific price agreed upon with the prospective purchaser. In fact the purchaser had not specifically agreed to purchase the equipment. The purchase of the equipment was affected, claims the plaintiff, because there was no permission for the plaintiff to enter the premises for inspection purposes. Cross-examination of the plaintiff's President indicated that the air conditioning and other systems, were new in 1983 and designed for this building. The plaintiff's market value testimony was an estimate at best therefore the court declines to give any weight to the testimony of George Peckar concerning the value of the personal property. State v. Baker,182 Conn. 52, 60 61 (1980). Robinson v. Faulkner, 163 Conn. 365, 372 (1972).
The plaintiff also offered expert testimony from an appraiser. The court had determined in a ruling made during the trial that the appraiser, although never having appraised this specific type of factory installed air conditioning equipment before, was an expert in used manufacturing equipment. The court therefore has decided to accept some CT Page 7409 of the testimony of the expert, Bernard Sencer, and to rely on different portions of the expert's supporting treatises and documentation in fashioning a prejudgment remedy in this particular matter. Dooley v.Leo, supra 587.
The defendant offered the testimony of Cleante Pimpinella, a who had done work for the defendant and has been a general contractor doing commercial restoration work in the lower Fairfield County area for over 50 years. The court examined the lease, the estimates for the restoration prepared by Mr. Pimpinella as well as the nature of the work performed using the reasonable wear and tear standards. The court will accept a portion of Mr. Pimpinella exhibits and testimony and will reject others. Dooley v. Leo, supra 587.
The defendant also offered evidence of damages through Mr. Pimpinella on the basis that there was no written permission for the plaintiff to install certain improvements in the property. The defendant points to paragraph fifth of the lease wherein "alterations, additions or improvements" can be made without the prior written consent of the defendant. Such a prior written consent clause can be waived.Baier v. Smith, 120 Conn. 568, 571 (1935). The court finds that there has been such a waiver. The plaintiff was in possession of the property for 10 years. There is no evidence of a written or oral objection made by the defendant to the installation of interior wall partitions creating a small set of offices inside the premises as well as the addition of storage shelves. The defendant also received the benefit of those additions and improvements during the one year it received rent directly from Dress Barn who presumably used these new improvements in its day to day occupation of the premises. Furthermore paragraph forty fourth of the main lease states premises can be used "for offices, storage, manufacturing, printing, and all other activities of the packaging, bindery, display, graphic arts and allied fields." The installation of minor partitioning creating internal offices in what essentially remains a large ware house and manufacturing premises without landlord's objections for over ten years is a waiver of the paragraph' fifth "no alterations, additions or improvements" prohibition.
The court will permit some physical damages as a set-off to the plaintiff's claims.
CONCLUSION
The plaintiff has established probable cause, that a judgment will be obtained in the amount of prejudgment remedy ordered in this case, taking into account the defenses, counterclaims and set-offs offered by CT Page 7410 the defendant in its evidence. Connecticut General Statutes §52-278d(a); New England Land Co. Ltd. v. DeMarkey, supra 620. The court in making findings of facts and reaching this conclusion has weighed the probabilities of the plaintiff's success on its initial claims as against the probability of the defendant's success on their defenses, counterclaims and set-offs. The standard of probable cause not the fair preponderance of the evidence has been used. At all times in these calculations the court is mindful of the fact that it cannot engage in mathematical exactitude. Hartford Whalers Hockey Club v. UniroyalGoodrich Tire, Inc. supra 285.
The court is of the opinion that the plaintiff is entitled to the return of its entire security deposit in the amount of $24,375.00. Paragraph Twenty Second of the lease indicates that the defendant is entitled to the return of its security deposit provided the "tenant has fully and faithfully carried out all of said terms, covenants, conditions on tenant's part to be performed. The court will treat the damages to the premises in a separate discussion in this opinion. There will be a set-off against the return of the full security deposit.
This court is also of the opinion that the defendant violated the terms of paragraphs Twenty-Second and Forty-Second of the lease by failure to allow access to the premises the months of May, June and July 1993 for the plaintiff to remove the air conditioning and other electrical systems. The court awards a prejudgment remedy for money damages based on the fair market value of that property.
The fair market value of all property is determined by one of three methods. The income method, the replacement cost method and the comparable sales method. The methods of valuation of real property and personal property are the same in the State of Connecticut.Northeastern Gas Transmission Co. v. Tersana Acres, Inc., supra 512;National Folding Box Co. v. New Haven, supra 586.
"In Second Stone Ridge Cooperative Corp. v. Bridgeport, 220 Conn. 335,342, 597 A.2d 326 (1991), we noted that at least four methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales, (2) capitalization of gross income, (3) capitalization of net income; and (4) reproduction costs less depreciation and obsolescence." Lomas Nettleton Co. v. Waterbury,122 Conn. 228, 230 (1936), Carol Management Corp. v. Board of Tax Review,228 Conn. 23, fn. 15 (1993). "Present true and actual value, "market value", "actual value", "fair market value," "market price" and "fair value" are all synonymous terms. Uniroyal, Inc. v. Board of Tax Review,182 Conn. 619, 623 n. 3 (1981). CT Page 7411
In this case the property claimed not returned i.e. taken by the defendant, are improvements to a building. There are two rules to determine market value under these circumstances.
The first is: "when a portion of a tract of land is taken the rule for estimating the damages to which the owner is entitled, in the absence of unusual circumstances (Stamford v. Vuono, 108 Conn. 359, 370,143 A. 245) is thoroughly settled; it's the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter and after completion of the public improvement." Andrews v. Cox, 127 Conn. 455, 457 (1941).Northeastern Gas Transmission v. Tersana Acres, Inc., supra 513. This method involves the determination of market value of real property. In this case there was testimony from three witnesses as to the cost of removal of the improvements, the air conditioning and other electrical systems. Under the Andrews rule those "expenses are not recoverable as such but are evidence of elements in the decrease in market value of which they may be an accurate measure." Andrews v. Cox, supra 460. It would appear under this first rule that the testimony of real estate appraisers as to the fair market value of the entire premises with the 10 year old improvements, as is the current situation, and the fair market value of the entire premises without those improvements, adjusted for the expense of removal, if relevant, would be the proper method of determining damages. The three appraisal methods of income, replacement cost and/or comparable sales would be used to determine the fair market value of the real estate with and without the improvements.
The second method would be the fair market value of the personal property after its removal, less the costs of removal and repair to the building caused by the removal. This method involves the determination of the fair market value of the personal property. Hawkins v. GarfordTrucking Co., Inc., 96 Conn. 337, 340-341 (1921). Under this second method the testimony of personal property appraisers would be helpful to determine fair market value. Again the appraiser would use the three appraisal methods of income, replacement cost and/or comparable sales.
Under either method the proper measure of damages for this claim of breach of lease is the amount necessary to put the plaintiff in as good a position as it would have been if the defendant had abided by the lease. Argentinis v. Gould, 219 Conn. 151, 157 (1991); Beckman v.Jalich Homes, 190 Conn. 299, 309 (1983); Lar-Rob Bus Corporation v.Fairfield, 170 Conn. 397, 404-405 (1976). The courts have recognized, however, the "proper compensation cannot be computed by a mathematical formula and the law does not furnish an ironclad rule for its CT Page 7412 assessment." Shaywitz v. Singing Oaks Day Camp, Inc., 8 Conn. App. 71,75 (1986).
The parties tried this case on the second rule method. It may be that the first method is the most appropriate method of determining damages. The common law rule in Connecticut in regards to land improvements not severed from the land is the reduction of the pecuniary value of the land occasioned by the act complained of. Hoyt v. SouthernNew England Telephone Co., 60 Conn. 385, 390-391 (1891), Eldridge v.Gorman, 77 Conn. 699, 701 (1905). The use of the second personal property rule was held improper in a tree damage case brought pursuant toConnecticut General Statutes § 52-560 Unless the tree is severed from the land to be used as firewood, the proper proof of damages is the reduction in the pecuniary value of the land occasioned by the act complained of. Maldonado v. Connecticut Light and Power Co.,31 Conn. Sup. 536, 538 (1974). This rule, usually applied in tree removal cases, is applicable to personal property additions to real property. "If the wrong consists in the destruction or removal of some addition, fixture as part of the premises, the loss may be estimated upon the diminutive of the value of the premises." Hoyt v. Southern New England TelephoneCo. supra 390.
In any event this court will only consider the theory upon which the prejudgment remedy case was tried. Brookfield v. Candlewood ShoresEstates, Inc., 201 Conn. 1, 14 (1986).
The court ruled during the trial that expert testimony as to fair market value would be permitted. Objections to qualifications of an expert normally to the weight not the admissibility of the testimony.First Bethel Associates v. Bethel, 231 Conn. 731, 742 (1995). "There is no requirement, as the plaintiff seems to argue, that `fair market value' must somehow be related to market sales. When as here, we deal with machinery which is not bought and sold in the normal market place, a test of fair market value which depends on operating use of the machinery is appropriate, and the court may properly find that such a method is the most appropriate system in an individual case. Somers v.Meriden, 119 Conn. 5, 174 A. 184; Underwood Typewriter Co. v. Hartford,99 Conn. 329, 122 A. 91;" Connecticut Coke Co. v. New Haven, 169 Conn. 663,669 (1975). The record is complete in that regard.
The court is guided by the testimony of the plaintiff's expert in determining the fair market value. The fact that there is actually no market for the purchase of this equipment does not prevent the fair market value from being determined. The court agrees with the opinion of the appraiser that the income method is not appropriate for used and CT Page 7413 installed air conditioning equipment on a factory roof since the equipment cannot produce income. The court also agrees that the comparable sales method is not applicable since there is no market for this used equipment. Therefore the replacement cost less depreciation method is appropriate.
The plaintiff's expert, Bernard Sencer, used a treatise for the determination of depreciation factors entitled Marshall and Swift Valuation Service. A copy was marked Exhibit S. The expert assumed the equipment to be in "good" condition in his use of the treatise to calculate fair market value. The expert did not examine the building or equipment due to no access being provided by the defendant.
In order for treatises themselves to be referred to, altered or read into evidence, the treatises or extracts must be recognized as authoritative by the expert on the stand and must have influenced or confirmed his opinion. Kaplan v. Maskin Freight Lines, Inc., 146 Conn. 327,331 (1959). The expert so testified. To the extent that the expert had not used this particular treatise with a great deal of regularity goes to the weight not the admissibility of the treatise.Kaplan v. Maskin Freight Lines, Inc., supra 334.
The court finds from the weight of the evidence that air conditioning and other electrical equipment used for a period of 10 years and would have depreciation greater than that assumed by the expert.
Exhibit R is the experts appraisal report. The court accepts the methodology used by Mr. Sencer to arrive at the final sum. His mathematic calculations were more carefully delineated in testimony. Mr. Sencer in page 9 of Exhibit R assumed the equipment appraised to be in "good working order". The report lists five categories: Excellent 85-100%, Good 60-85%, Fair, 40%-60%, Poor 15% to 40% and Scrap 0%-15%. The report also relies as Marshall and Swift which contains four categories; Excellent, Good, Average and Low. Mr. Sencer used the "Good" category in selecting the useful life of all appraised equipment.
Mr. Sencer did not examine the equipment. There was no evidence that the equipment was in working condition nor when it was last maintained. The equipment was new in 1983. The most costly components were the five twenty ton Carrier air conditioning systems installed in the roof. They were constantly exposed to the elements for over 10 years. The model manufactured by Carrier is outmoded. Carrier no longer manufactures a comparable model. There is no market to this used industrial equipment. At best "Average" is the proper Marshall and CT Page 7414 Swift useful life category and in some instances the "Low," "Salvage" or "Scrap" category should be used.
By utilizing the these standards the court has independently recalculated the expert's report, Exhibit R. The recalculation is attached as Schedule A of this decision. The court concludes that the entire personal property at a fair market value less removal costs is worth $14,672.00.
Therefore the plaintiff is entitled to receive from the defendant the sum of $39,047, $24,375 as security deposit and $14,672 as personal property.
The plaintiff further claims that the defendant is guilty of violating Connecticut Unfair Trade Practices Act. Connecticut GeneralStatutes § 42-110g "It is well settled that in determining whether an act or practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when an act or practice is unfair; (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or businessmen.,McLaughlin Ford, Inc. v. Ford Motor Co, 192 Conn. 558, 567-68 (1984);FTC v. Sperry Hutchinson Co. 405 U.S. 233, 244-45 (1972). WilliamFord, Inc. v. Hartford Courant, Co., 232 Conn. 559, 591 (1995)
CUTPA applies to the relationship of landlord and tenant. Conawayv. Prestia, 191 Conn. 484, 492-493 (1993).
"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive, . . . or a practice amounting to a violation of public policy. . . . Furthermore a party need not prove an intent to deceive to prevail under CUTPA." Jacobs v. Healy Ford-Subaru,Inc. 231 Conn. 707, 725-726 (1995). "(Internal quotations omitted.)"
Punitive damages are awarded for a violation of Connecticut Unfair Trade Practices as a statutory remedy. Connecticut General Statutes§ 42-110g(a) Punitive damages in Connecticut common law are limited to attorney's fees. Works v. Silver, 154 Conn. 116, 127 (1966) The CT Page 7415 damages for a CUTPA violation are in addition to attorney's fees.Connecticut General Statutes § 42-110g(a) and (d).
CUTPA violations must contain the elements for common law punitive damages. In seeking an award for punitive damages, it is essential for one to offer evidence of what those damages are. "Punitive damages, applying the rule in this state as to torts, are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights." Collens v. NewCanaan Water Co., 155 Conn. 477, 489 (1967). This rule applies where the plaintiff seeks the return of property. "In replevin, punitive or exemplary damages are not allowable in the absence of fraud, malice, gross negligence or oppression." Hall v. Smedley Co. 112 Conn. 115, 119-120
120 (1930). It is not necessary for actual intention to do harm to be proven for punitive damage award to be upheld. Linsley v. Bushnell,15 Conn. 225, 235 (1842); Collens v. New Canaan Water Co., supra 490.
A CUTPA claim may be based on an isolated unfair or deceptive act. on the part of the defendant. Michael I. Stula Agency v. Wasniewski,9 CSCR 159, January 27, 1994 (Austin, J.), Barraco v. Ethel Allen, Inc.,
Superior Court, Judicial of Stamford at Norwalk Docket Number CV9008-1801. 1801, February 6, 1992 (Leheny, J.). The court recognizes there is a divergence of opinion among the Superior Court judges on this particular: issue. This court joins those judges indicating that an isolated unfair or deceptive act is sufficient to support a CUTPA claim
There is also a split of authority among Superior Court judges as to whether a simple contract breach is sufficient to establish a violation of CUTPA. This court joins a majority of Superior Court decisions that indicate a simple contract breach is not sufficient to establish a violation of CUTPA. "A simple contract breach is not sufficient to establish a violation of CUTPA, particularly where the count alleging CUTPA simply incorporates by reference the breach of contract claim and does not set forth how or in what respect the. defendant's activities are either immoral, unethical, , unscrupulous or offensive to public policy." Aussenhandel v. Grant AirMast Corp.,
2 Conn. L. Rptr 590, October 17, 1990 (Lewis, J.); Secondino Son, Inc. v.L.D. Land Co., 1 Conn. Ops. 99, January 30, 1995 (Hadden, J.). It appears that more than a single contract violation is necessary to allege and to prove a CUTPA claim for a punitive damages. It requires calculated, deceitful and unfair conduct associated with a breach of contract to sustain CUTPA damages. Lester v. Resort CamplandsInternational, Inc. 27 Conn. App. 59, 62 (1992).
A commercial tenant's responsibility under a lease for repairs and CT Page 7416 maintenance does not impose on the tenant the obligation to repair structural items. Tenant's duties to restore property to original condition at the end of the lease does not require the tenant to correct for reasonable wear and tear. Harwin, Inc. v. Connecticut Co. H-1032, August 22, 1994 (Holzberg, J). Landlords and tenants routinely litigate these types of issues. This case is essentially a contract dispute.
Failure to return security deposit and denial of its existence, standing alone without further allegations, does not sufficiently allege violation of CUTPA. Ginsberg v. Sobol, H-1101, January 26, 1993 (Holzberg, J.).
Although the plaintiff claims that the defendant in concert with Dress Barn, Inc. gave it a runaround concerning the inspection and removal of the equipment as well as the return of the security deposit, the court is of the opinion that the real cause for the dispute is a lease interpretation issue. The plaintiff caused part of the problem by subleasing the premises to a third party. The plaintiffs did not establish probable cause regarding any CUTPA violation. Therefore no prejudgment remedy will be granted for punitive damages or attorney's fees. Connecticut General Statutes § 42-110g, Collens v. New HavenWater Company, supra 491.
The plaintiffs further claim that there was a novation and a new contract that was entered into by reason of the defendant's continuation of the tenancy with Dress Barn and the correspondence between the properties.
Novation requires the proof of the landlord's specific intent to release the contractually bound party. Carrano v. Shoor, 118 Conn. 86,95-98 (1934); Gateway Co. v. DiNoia, 232 Conn. 223, 233 (1995). The leasing of the premises to a new tenant constitutes a novation which relieves the prior tenant of the obligations under the lease. McCarthyv. Lauria NH-616, February 28, 1994 (Mintz, J.)
In every contract there is a implied a covenant of good faith and fair dealing. Habetz v. Condon, 224 Conn. 231, 238 (1992). The implied covenant of good faith and fair dealing requires "that neither party doing anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, supra 238; Warner v.Konover, 210 Conn. 150, 154 (1989).
The parties had the obligation to treat each other with the implied covenant of good faith and fair dealing. Warner v. Konover, supra 154. The parties clearly contracted with one another to be bound by the 1983 CT Page 7417 lease. The sublease to Dress Barn, Inc. did not change that duty, nor did the subsequent correspondence and the short tenancy between the defendant and Dress Barn, Inc. The parties continued to have obligations to treat each other in a good faith and fair manner. Warnerv. Konover, supra 154. The evidence does not establish that there was a novation.
The court has considered the defendant's claim for damages as a set-off. The testimony of Mr. Pimpinella, the defendant's construction expert, as to the restoration costs has been compared with the lease. The court determines that the matters relating to the removal of the shelving, the removal of the partitions and the restoration of the premises to its former condition concerning the floor are all matters that were subject to the prior approval of the defendant. By not objecting at the time of installation the defendant waived its lease approval rights. There was no evidence of any demand by the defendant to the plaintiff to remove these partitions, shelving and floor coverings at the end of the main lease. The main lease ended on June 30, 1993. For a number of months thereafter the defendant permitted Dress Barn, Inc. to use these very installations. The defendant collected rent from Dress Barn, Inc. during that time. The court concludes that the defendant has waived its rights as against the plaintiff to collect restoration damages for partitions, shelving and floor covering.
The court does accept the testimony of Mr. Pimpinella concerning the other items and therefore finds that the defendant has established by probable cause standards the likelihood of setting off a portion the plaintiff's damage claim. The itemization of the damage set-off is attached [attached] as Schedule B of this decision. The court concludes that the defendant is entitled to a set-off of $10,073.
Therefore the court finds that there is reasonably probable cause that the plaintiff will sustain a judgment as against the defendant, taking into consideration the defenses, counterclaims and set offs filed by the defendant, in the amount of $28,974.00.
Therefore the court finds that a prejudgment remedy permitting the attachment of the real property set forth in the application for the prejudgment remedy should be granted in favor of the plaintiff as against the defendant in the amount of $28,974.
After consideration of the factors enumerated in C.G.S. § 52-278d,
including the fact that the attachment is on real property, the court finds that there is no damage that may result from the granting of the CT Page 7418 prejudgment remedy. The prejudgment remedy of $28,974 will enter without bond.
The defendant shall be permitted to substitute a $28,974 cash or institutional surety bond for the prejudgment remedy in accordance withC.G.S. § 52-278d(4).
BY THE COURT,
KEVIN TIERNEY, JUDGE