[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has sued claiming it provided telephone directory advertising and/or telephone service to the defendants. The complaint further alleges the defendants did not pay for these services.
The defendants answered admitting they entered into an agreement to receive the services of the plaintiff but deny they owe the plaintiff money. The defendants have also filed a two count amendment to their answer alleging a set off and a counterclaim.
The plaintiff has filed a motion to strike the defendants set off and counterclaim. The rules governing a motion to strike are clear. The pleadings of the non-moving party must be read in their most favorable light.
(1)
The set off claim analyzed as a set off must be stricken. The ancient rule has always been that the debt sought to be set off had to be for a liquidated amount, Palmer v. Green, 6 Conn. 14,19 (1825), Lippit v. Thames Loan Trust Co., 88 Conn. 185, 199
(1914).
There have been limited exceptions carved out from the general rule, Hubley Mfg Supply Co. v. Ives, 81 Conn. 244, 247
(1908) (suit by foreign corporation on debt in foreign state)Sullivan v. Merchants National Bank, 108 Conn. 497, 501 (1928) (set off allowed on unliquidated debt where plaintiff insolvent; court suggested exceptions shouldn't be confined to suits by out of state or insolvent plaintiffs but such set offs can be allowed for "an equivalent equity", Id. p. 503. No equitable reason has been advanced by the defendants as to why what is clearly a set off for an unliquidated debt should be allowed here. CT Page 3348
The defendant argues that the set off should be regarded as a counterclaim. It is true that the label put on a pleading is not controlling, Northwestern Electric Inc. v. Rozbicki, 6 Conn. App. 417,426 (1986). But no matter what the label the claim made must conform to the requirements of our rules of practice.
The language of the "set off", now styled a counterclaim is completely conclusory. It alleges the defendant Anthony Perri Insurance Agencies has suffered substantial loss "by virtue of the breach of the plaintiff's duty of good faith and fair dealing in regards to the defendants as well as the violation by the plaintiff of the Connecticut Unfair Trade Practices Act §42-110a et seq."
Practice Book § 108 requires that a pleading must "contain a plain and concise statement of the material facts on which the pleader relies." In Smith v. Furness, 117 Conn. 97, 99
(1933) the court said:
 "The adverse party has the right to have the facts appear so that the question whether they support the conclusion may be determined and that he (sic) may have an opportunity to deny them. . . . A pleading defective in alleging a conclusion without facts to support it is demurrable."
The counterclaim does assert a CUTPA violations but there is no way of knowing whether the set off refers to all of the alleged CUTPA violations set forth in paragraph 5 of the counterclaim. If it does then the "set off" is merely duplicative of the counterclaim.
The motion to strike the pleading labelled "set off" is granted.
(2)
In the counterclaim the defendants alleges a violation of CUTPA and set forth the factual allegations supporting their claim in paragraph 5. In that paragraph it is said several "unfair or deceptive acts or practices" were engaged in by the defendant. Five matters are alleged; in reality four since the last allegation, 5(e) merely refers to "other deceptive practices or acts". This is conclusory and cannot be relied upon CT Page 3349 to resist the motion to strike, Smith v. Furness, supra.
In determining whether an act or practice violates CUTPA the so-called cigarette rule applies. That rule set forth inMclaughlin Ford Inc. v. Ford Motor Company, 192 Conn. 558, 567
(1984) states the test is:
 "(1) Whether the practice, without necessarily having previously been considered unlawful offends public policy as it has been established by statutes, the common law or otherwise-whether in other words, it is within at least the penumbra of some common law, statutory, or other established concept of fairness (2) whether it is immoral, unethical, oppressive or unscrupulous (3) whether it causes substantial injury to consumers, (competitors or other businessmen)".
The court in Normand Josef Enterprises Inc. v. CNB, 230 Conn. 486,522 (1994) quoting from other cases went on to say: "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." The court will now examine the CUTPA violation allegations set forth in paragraph 5(a) through 5(d).
Subparagraph 5(a) asserts one deceptive or unfair act or practice of the defendant phone company was:
 "the termination of the line listing of the company.
If the defendants are asserting a breach of contract claim this allegation is not sufficient to raise a CUTPA claim. Most of the trial court cases that have examined this question have held that a simple breach of contract is not enough to establish a CUTPA claim. A claimant must point to substantial aggravating circumstances that surround the breach-immoral, unethical, unscrupulous activity or conduct offensive to public policy, A.Secondino Sons Inc. v. L D Land Company, et al.,13 Conn. L. Rptr. 232, 233 (1994).
Subparagraphs 5(b) and 5(c) appear to allege acts of CT Page 3350 negligence:
 "(b) Failure to advise the defendant, Anthony J. Perri Insurance Agencies Inc. before and after the termination of the line listing of the defendant's right to a free line listing in the Yellow Pages Telephone directory.
 (c) unilateral change of the telephone number of the defendant . . . to an auxiliary number without consultation with the defendant as to the consequences thereof."
Paragraph 6 alleges "substantial injury" in a manner adequate to meet the third prong of the so-called "cigarette rule". But the other two requirements of the rule have not been met.
As noted in Biondi v. Ste Lacar Holdings Inc., 1 Conn. Ops 293 (1995) several cases have held that an allegation of a single act of misconduct can validly assert a CUTPA claim, although some trial courts have come to a different conclusion, Bigler, et al.v. Center Bank Mortgage Co., et al., 13 Conn. L. Rptr. 142, 144 (1994). The Biondi court could find no court that has held a single act of negligence was the basis of the purported CUTPA violation.
The problem here is that even if two acts of negligence or misconduct are alleged in 5(b) and (c) there are no allegations as to how these particular acts were fraudulent, deceptive or discriminatory beyond the mere fact that the acts were alleged to have happened. Also subparagraph 5(c) states a number was unilaterally changed without consultation with the defendant as to the "consequences thereof." The court is not even informed of what those consequences might be.
In Williams Ford Inc. v. The Hartford Courant Co., 232 Conn. 559,586 et seq (1995) auto dealership groups sued the Courant on the grounds that the paper didn't inform them of the availability of a more cost-effective advertising rate. The court held the second or third prong of the cigarette rule had not been satisfied because the plaintiffs had to show the "Courant's negligence constituted an "immoral, unethical, oppressive or unscrupulous practice", Id. p. 593. Similarly here the defendants have not plead any facts to show that the failure to inform and consult with allegations are anything more than simple CT Page 3351 negligence. There is no allegation that these acts occurred to pressure the defendants to pay a debt that was contested or that the services not provided to , the defendants were even mandated by state or federal regulations. There is no allegation that these actions by the company were motivated by ill will or to surreptitiously aid a competitor of the defendants all to the phone company's advantage. There are simply, allegations that certain things weren't done that ought to have been done by the phone company and that this harmed the CUTPA claimants. That is not sufficient.
The reason why simple breach of contract or negligence claims don't rise to the level of CUTPA claims is that for these types of claim there are already remedies provided for and before a statute permitting such heavy monetary recoveries is allowed to operate there must be something especially serious about the case — a type of conduct so offensive that it can't be tolerated if consumers are to be able to enter the market place with any degree of trust and confidence. To impose the sometimes draconian and where appropriate justifiable remedies provided for in CUTPA on a defendant responsible for a simple breach of contract or act of negligence might have an overly destructive effect on the very markets all these fair trade statutes were trying to sanitize and encourage in the first place.
Finally, subparagraph 5(d) claims there was a deceptive and unfair trade practice because of:
 "(the) unilateral acceleration of the amount due by the defendant to the plaintiff for display advertising for reasons beneficial to the sales representatives of the plaintiff."
I just do not understand what this means or if it is true how the conduct was fraudulent, immoral, unscrupulous or oppressive. It is not alleged that the contract between the parties did not authorize such an unilateral acceleration of amounts due — that is not an uncommon provision in commercial contracts. That such actions were taken for "reasons beneficial to the sales representatives of the plaintiff" does not make the actions, without more, immoral or oppressive. If the contract authorized this action and these employees acted so as to advance their employer's interest perhaps even to impress their employer with their efficiency, how can that be a CUTPA violation? Is that all that is being alleged? If not then what? CT Page 3352
I will also grant the motion to strike the counterclaim alleging a CUTPA violation.
Thomas Corradino, Judge